Judge Underwood,
delivered Ihe Opinion of the Court.
In deciding these controversies, wé have deemed it only necessary to enquire into the protection which the plaintiffs in error derive from the lapse of time and their possession of the land. Lames entry of 21000 acres has heretofore been adjudged valid by this court and the evidence in this record fully sustains it. The claim oí the defendants in error derived from this entry, without regard to their other claims, must therefore prevail, unless the plaintiffs are protected by the statute of limitations.
First in regard to the defence set up by Beal. It seems that his ancestor, in 1787, sold the 2<j)0 acres *233 ©f land (the title to which the defenders require him to release) to James Robertson; that he entered and took possession thereof under Beal’s title in l".7S7, left it for some months on account of the danger apprehended from Indians, returned to it in 1788 and continued to reside thereon until 1805, yielded the possession to Joseph Brooks, the ancestor of the defendants, who engaged to pay him for his improvements and to pay to Beal the purchase money in case he succeeded in recovering it by law from Robertson. This suit was commenced on 10th of March 1810.
B after he has g®,^ 3 year®, brings his suit chancery against A’s vendor, rely»ms on his elielinquishmeut by A’s vf?do[ oi1hl’ tjthT thiT chancellor wi!1 consider ^«osifonas ¡he possession A’s vendor and !5y c°,n~ 17 yRars possession of A the 3 B°°S~ make out 20 yearspossession in A’s vendor, and therefore re-r,Isp to give relief tu
Robertson settled within the interference between the claims of Beal and Holder, both of which covered by Lames entry". Holder’s patent is older than Beal’s. Joseph Brooks continued in possession after he received it from Robertson, until he instituted this suit; and if the time running between the date of the institution of the suit, and the delivery of the possession bv Robertson to Brooks, should be added to the seventeen years during which Robertson lived upon the land; and the possession of Brooks, after he entered with the consent of bertson, can be regarded as the possession of Beal; then there has been an adverse possession of more than 20 years, and the complainants ought not to have succeeded against Beal in the circuit court. We are of opinion that the possession of Brooks, under the circumstances of this case, should be regarded as the possession of Beal. Robertson as vendee entering under an executory contract was the quasi tenant of Beal. Brooks was well apprised of the relation subsisting between him and Beal. With this knowledge, he attempted to seduce Robertson into a sui render and disclaimer of the title, under which he had entered and which he was estoped to deny, by agreeing to pay him for his improvements and to pay the purchase money to Beal in case he recovered by law. We look upon this conduct as fraudulent in respect to Beal. No man should be permitted to buy up the claim of the vendee of land holding under an executory contract, and b\r so doing convert the friendl-,- po--session subsisting befcw-en rfie vendor and vendee into a possession ad *234 verse to the vendor’s right. For if such a doctrine were tolerated it would tempt adverse claimants to offer rewards to faithless vendees in order to gain the possession,, and then such claimants would reap advantages from the strife and contention resulting ■from the violations of contracts on the part of vendees, who but for the interference might have punctually performed their -engagements. To prevent such consequences in the present case it seems to us5 that Brooks should be considered in equity as the vendee of Robertson entering and holding under him and that he should not be.permitted to set up a possession adverse to Beal and Robertson. Were we to concede him the right of instituting suit as-he has done, until suit brought,-we thinlc his possession is no-more than the possession of Robertson. We do not intend to decide what effect the possession of Brooi.s, claiming adversely, may have in a court of law; or even in a court of equity, after a continuance of that possession for such a period, as would make the statutes of limitation apply in his favor. These statutes did not operate in his favor when his bill was filed, and therefore considering the manner of his entry we think he does not apply to the chancellor with a good grace, and hence we refuse to aid -him in his attitude of complainant. It follows that the court -erred in deciding against Beal. Wherefore the decree as to him is reversed with costs and the cause remanded with directions to dismiss the bill so far as.he is concerned. The case of Peyton &■-. vs. Stith, V Peters 485 sanctions the foregoing doctrines.
in the second place we must investigate the defence relied on by Reed. By his tenant Westfall he took possession of part of the land in controversy more than twenty years prior to the commencement of this suit. Westfall’s cabin was built in February 1790, but he did not move into it with his family until April. We look upon the erection of the cab-bin as taking possessiod of the land. This was more than twenty years before suit was brought. The possession was continued without interruption in those claiming under Reed from the erection of Westfall’s cabbin down to the institution of this suit. *235 It seems that Hornbeck and Reed, at an early period, became equitably entitled to the whole of Ldward Al illiams’s settlement and preemption. Hornbei k took possession as far back as 1786 by clearing. His residence upon the land commenced in 1788, and was continued thereafter uutd his death and his beirs succeeded him, so that in his case there was more than twenty years actual resilience upon the claim of Williams before this suit was brought. It. appears that Westfall’s cabliin was- built outside of the lap between the claims of Holder and Williams and as Holder’s was the eldest patent the possession-taken by Westfall of Williams's claim- caunot he construed as extending upon tiie land covered by the senior grant. Indeed there is evidence shewing that Westfall cautiously avoided entering upon Holder’s, claim with a view to take possession within the lap. It does not appear that Hornbeck was ever possessed of any land-covered by the grant to-Molder. So-far therefore as the decree of the circuit court requires Reed to relinquish claim to the land within the boundary of Holder’s patent,, we perceive no objection to it. But we think the court erred in decreeing against Reed for the land outside of Holder’s patent,
if \f wijQ. owns a tract land °f a a oros* Tas bepn 'in possl’ssion 15 TcTselS one lmndrod acres to ii on whi 'h no improvement had been made prior to the sale, and thereupon B immediately enters, makes improvements and continues six years in possession, in such a case, the senior patentee could not evict B; because by coupling the six jears pos. session of' B with the 15 years possession of A, there would be 20 years adverse continued possession against the senior patentee.
*235 it satisfactorily appears that Hornbeck and Reed had bought the whole of Williams’s settlement and preemption more than twenty years previous to the commencement of this suit. This is inferable from their taking possession of the land, claiming it under Williams and his subsequent conveyances, besides other circumstances in the cause. It is true that when Hornbeck and Reed by his tenant West-fall, took possession, it does not appear that any partition- had been made between them; nor does it appeal’ that they respectively claimed to be possessed to any particular marked and definite boundary. But as Hornbeck and Reed were together the equitable owners of the whole settlement and preemptioiq and both had entered and taken possession, we consider them as possessed (although no partition had been made) to the extent of Williams claim, except so far as their possession may .have been íesti’ieted by the Unes of eider grants. Hornbeck. and *236 Reed, from the dates of their respective entries, were tiie quasi tenants of Williams up to the time he conveyed to them. Their possession priot to the conveyances executed by Williams was the possession of Williams, and extended according to the principles so often recognized by this court to the limits of Williams’ claim, except restrh ted as above W hen Williams conveyed seperate parcels, to Reed and Hornbeek, the possession of each win thereafter confined to the parcel conveyed to him; but in relying upon the statute of limitations, each might well couple his separate possession of the parcel conveyed to him, from the date of his deed, with the possession of Williams by his quad tenants of the entire tract, before the deeds of conveyance were executed; and thus insist upon the running of the statute from the time Williams was first possessed. If A has a tract of 1000 acres covered by an elder patent, and A has been fifteen years in possession and then sells 100 acres to B on which no improvement had been made prior to .the sale, if B enters immediately, makes improvements and continues in possession six years, can the senior patentee evict B? We think not, because the statute would afford a protection, by coupling the six years possession of B under his purchase with the fifteen years prior possession of A, and thus more than twenty years adverse continued possession would be established. The principles of this case are applicable to the cause before us.
Triplett and Chapeze, for plaintiffs; Crittenden and Richardson, for defendants.
The decree of the circuit court as. to Reed is reversed, and the cause remanded with directions to dispose of the cause in respect to him according to this opinion. Reed must recover his costs in this court.