Gossom
*vs.*
Donaldson.

tain the aid of a specific attachment, as in this case, it is necessary that a jury shall intervene to assess the damages unless dispensed with. (*Civil Code, sec.* 361.

---

Case 34.

Chancery.

## Gossom *vs.* Donaldson.

### APPEAL FROM WARREN CIRCUIT.

1. The reversal of a decree in chancery, under which a sale of land has been made, does not ordinarily vacate and render void the sale, though the complainant in the suit be the purchaser. (8 *B. Monroe*, 105.) The general rule is, that the sale is valid where it is made under the decree of a court of competent jurisdiction, unless the decree be void, although it may be reversed. (4 *Dana*, 438; 7 *B. Mon.* 57; 12 *Ib.* 472.)

2. To maintain the benefit of a *lis pendens*, it is not necessary that the suit should be prosecuted with even ordinary diligence, it can be lost only by unreasonable and unusual negligence in its prosecution; such was not the case in the suit here referred to, and the purchaser is to be regarded as a *lis pendens* purchaser, and bound by the decree.

3. One who enters under the junior title, having the elder and superior equity, cannot fortify his possession against a joint owner by acquiring the elder legal title.

4. The entry of one joint owner upon land inures to the benefit of all the joint owners; and such a posession is not adverse to the right of the other joint owners, and will not become so unless accompanied by some open public act denying their right, of which they are informed.

5. An entry upon land under a purchase is amicable with the right of the vendor, so long as the vendee looks to the vendor for title, but so soon as a deed is made the possession of the vendee becomes adverse to all the world, and when continued for twenty years it bars a suit to recover the possession.

[The facts of the case are set out in the opinion of the court. Rep.]

*J. R. Underwood* for appellant—

Argued—1st. It is insisted that the appellee has failed to show title to the land which he seeks to recover. The reversal of the decree of the circuit court, under which the land was sold in 1830, which reversal took place in 1831, rendered the deed executed by the commissioner who made the sale invalid. (See *Thompson vs Mason*, 4 *Bibb*, 196.) This deed is the foundation of appellee's claim; if it fails to sustain his title he fails. He is a purchaser under his own decree; so soon as that decree was reversed, his title failed. Subsequently, upon farther preparation of the suit, after the reversal, the circuit court confirmed the first sale under the decree that had been reversed. After the sale the defendant, whose title the suit was intended to subject to sale, died, and the title descended to his heirs, and could not be passed from them without a deed or by descent. This was not done; the circuit court undertook to confirm and ratify a sale made under a decree which had been reversed. This was impossible. There are only two modes of passing title to real estate, one by descent, the other by deed or will legally execut-

ed. But before this decree, by which it was attempted to confirm the first sale, Thos. Middleton received a deed conveying to him the land which the appellee was endeavoring to sell for his own benefit, as well as the right of the other joint owners thereof, and thereafter conveyed to appellant, under which he has held possession for more than twenty years.

2. The appellant purchased the whole of the claim of John Dixon's heirs of Thomas Middleton, and took his bond for title, dated 26th October, 1827, the title to be made in eighteen months. He took possession as early as September, 1828, by his tenant, and has held the possession ever since. The appellant relies upon the statute of limitations, which evidently bars the recovery by appellee, it being more than twenty years since the land has been held by appellant adversely to all the world.

3. The fact that a litigation was going on between the parties, in regard to the right of this land, or part of it, did not have the effect of preventing the influence of lapse of time upon the rights of the parties.

4. The appellant never looked to Dixon or Donaldson, the appellee, for title during any part of the time of his occupancy of the land; he had no contract with either of them, and owed them no allegiance. (*Winlock vs Hardy*, 4 *Litt.* 274, *Chiles vs Boone*, 3 *Dana*, 567.)

5. The position assumed by appellee, that Gossom's possession did not extend to the part allotted to Holdensby Dixon, because upon that part there was no improvement, cannot be sustained, as Gossom was in possession claiming by a marked boundary, and was legally and actually possessed to the extent of that boundary. (See *Monroe and Harlan's Dig.* 2 *vol.* 406, *sec.* 11, *and authorities there cited; same book and page, sec.* 13; *same book, page* 414, *sec.* 106, *and authorites there cited.*) This possession was before any division, and could not be changed by the act of dividing the land under the decree, when no possession was taken under that division.

6. Donaldson's deed was made while Gossom was in the adverse possession of the land, and is therefore champertous. (*See* 3 *J. J. Marshall*, 5b1; 4 *B. Monroe*, 480.) The circuit court thought, that as it did not include any part of the improvement, that it was not champertous; this is not the law as held by this court in *Moss &c. vs Scott*, 2 *Dana*, 274.

7. It is denied that the facts of this case can place Gossom in the attitude of trustee for the appellee.

8. The suit of appellee was not prosecuted with proper diligence, and therefore he lost the benefit of the *lis pendens*, and cannot now rely on it.

*Clarke & Green*, for appellees—

The following questions arise upon the facts in this record:

1. Was the appellant, or those under whom he claims, *lis pendens* purchasers of the land in contest, so as to be bound by the decree rendered in the pending suit of the appellee against Dixon, &c.

2. Are the conveyances to the appellee champertous.

3. Is the appellant protected in his possession by lapse of time.

4. Can the appellee avail himself of the superior equity of Dixon's title, as sustained by the appellant's decree against Sharp's title, or should he have taken proof to show the superior equity, as though none had been taken, to establish the superior equity; and in the absence of such proof, can appellant avail himself of Sharp's elder legal title?

5. If appellee is entitled to recover, what shall be the extent of that recovery? Shall it be the one-sixth of 400 acres, or one-sixth of 320 acres?

1. The appellant purchased under judgment and execution agains Holdensby Dixon, his interest of one-sixth in the 400 acre tract of land on the 9th of February, 1824; on the same day he brought suit for partition, and process was served, and there was a *lis pendens*. (*Lyle vs Bradford*, 7 *Monroe*, 116; 7 *B.*

*Monroe*, 314; 11 *Ib.*, 310; 7 *Dana*, 110; 3 *B. Monroe*, 116.) Yet Gossom insists that he is not a *lis pendens* purchaser. The voluntary alienation of property, during the pendency of a suit for the property, does not affect the rights of the parties to the suit, whether it be an effort to transfer the equitable or legal title. (*Debell vs Foxworthy*, 9 *B. Monroe*, 231; *Fenwick's ad'mr vs Macey*, 2 *Ib.*, 486; *Watson vs Wilson*, 2 *Dana*, 408.)

The 2d and 3d questions will be considered together. After the division each person who claimed part of the 400 acre tract patented to Dixon, held in severalty, as much so as if they had held under different titles, and a purchase of the interest of any one by the heirs of Dixon held this part in severalty. The appellee then held the sixth which he had purchased, and claimed in severalty. The appellant entered under his purchase from other heirs of Dixon in 1828, before the division; by the division his part, so purchased, was severed from the remainder of the tract. The appellant never had possession of any part of the land except that acquired by the deed from Sharp; the deed of Henry Dixon did not pass it; he had not the title, and therefore could not convey it. The deed of Holdensby Dixon did not pass it. It had been sold under the decree in favor of appellee, and moreover the deed was void because of the *lis pendens.*

The appellant never had the actual possession of the part allotted to Holdensby Dixon, and therefore the conveyance to the appellee was not champertous. (*Jones vs Chiles*, 2 *Dana*, 29.)

4. The appellant, in order to secure the title to the land in his contest with Sharp's elder legal title, made use of the superior equity of Dixon to the land, which Donaldson, the appellee, owned under his purchase, and having made it available he must be regarded in equity as holding the title in trust for the benefit of the appellee, and not adversely to his right. (*Overton's heirs vs Woolfolk*, 2 *Dana*, 373;

*Morgan's heirs· vs Brown's heirs*, 4 *Monroe*, 279; *Morrison's ex'ors vs Caldwell*, 5 *Ib.* 435; *Vanmeter vs· Griffith*, 4 *Dana*, 89; *Lee and Graham vs Fox*, 6 *Dana*, 176.) Thes e authorites, though not strictly in. point, recognize the principle relied on.

5. What should be the extent of appellee's recovery? The sixth of 400 acres or the sixth of 320? From the facts in the case we insist that the decree should have been for $66\frac{2}{3}$ acres, instead of $53\frac{1}{3}$, and hope the court will thus far correct the decree.

Judge SIMPSON delivered the opinion of the court.

GOSSOM
*vs.*
DONALDSON.

Sept. 30, 1857.

Holdensby Dixon being the owner of one undivided sixth part of a tract of land, containing four hundred acres, which had been patented in the name of his father, John Dixon, deceased, Presley Donaldson, in February, 1824, brought a suit in chancery to subject this undivided interest to sale, for the payment of a debt which the said Holdensby Dixon owed him. On the 27th of November, 1829, a decree was·rendered in that suit, making partition of said tract of land, and allotting one-sixth part thereof to Holdensby Dixon, which was ordered to be sold for the payment of the debt due to the complainant. It was afterwards sold and purchased by the complainant, Presley Donaldson , to whom it was conveyed by the commissioner who made the sale, and on the 5th of March, 1830, the sale and conveyance by the commissioner were approved and confirmed by the court.

In 1827, during the pendency of the suit which had been brought by Presley Donaldson, Thomas Middleton obtained a deed of conveyance for one half of said four hundred acres from two of John Dixon's heirs, one of whom assuming to be the owner of Holdensby Dixon's interest therein, sold and attempted to convey it, as well as his own interest, to the purchaser, Thomas Middleton. On the 15th of November, 1829, a deed was made to said Middleton, by part of the heirs of John Dixon, deceased, purporting to convey to him the remaining undivided half of said four hundred acres of land.

In 1827 Middleton sold the whole of said tract of four hundred acres to William Gossom, and gave him a bond, in which he bound himself to make him a good title thereto, within eighteen months from that date. Gossom, under and by virtue of his purchase, entered on the land in 1828, and he and his son, T. B. Gossom, who claims under him, have had it in possession ever since, claiming it as their own. Middleton does not appear to have made a deed to Gossom according to the stipulations in his bond, but in the year 1833 four of the heirs of John Dixon, deceased, Holdensby Dixon being one of the four, executed a deed to him for the land, in which it was recited, that they had previously sold said land to Middleton, and attempted to convey the same to him by defective conveyances, and as he had sold it to Gossom, who had paid him for it, that deed was made to the latter to correct and supply all the defects in the previous conveyances.

The four hundred acres of land purchased by Gossom under Dixon's claim, was covered by an elder patent, which issued to Solomon P. Sharp. Gossom in 1829 instituted a suit in chancery against Sharp's heirs, asserting a superior equity to the land under Dixon's title, and praying that the defendants might be required to release and convey to him the elder legal title. He obtained the relief he sought, by a decree which was rendered in 1839, and acquired the legal title by a deed executed by a commissioner for and on behalf of Sharp's heirs.

A petition in equity was exhibited in this case, in May, 1855, by Donaldson against Gossom, for the interest of Holdensby Dixon in the four hundred acres of land. The plaintiff asserts a right to it under the purchase which was made at the decretal sale in the suit already referred to, and contends that William Gossom having purchased the land after the suit was instituted, was a purchaser *pendente lite*, and therefore neither he nor his vendee can controvert his right to it.

The defendant insists that the purchaser at the decretal sale acquired no title to the land; and if he did, that the suit had been prosecuted so negligently that it had lost the character of a *lis pendens* at the time the purchase was made by Middleton. He also insists that he has obtained the legal title from Sharp's heirs, and is not bound to surrender it to the plaintiff, and he also pleads and relies upon the statute of limitations as a bar to the plaintiff's action.

The ground upon which it is contended that the purchaser at the decretal sale acquired no title is, that the decree under which the sale was made was subsequently reversed by this, court; and no other decree was rendered in the case directing a sale of the land, but the only decree which was rendered merely confirmed the sale made under the previous decree, which act of the court, as argued, was entirely nugatory, and of no avail whatever. The reversal of the decree under which the sale was made did not, however, have the effect attributed to it. It did not vitiate the sale, nor divest the purchaser of the title which he had acquired. The fact that the complainant himself was the purchaser made no difference. It is the policy of the law to sustain judicial sales, and there is the same reason for protecting parties who are purchasers that there is for protecting strangers. (*Benningfield vs Reed*, 8 B. Mon. 105.) The general rule is, that a purchase at a decretal sale, made by a court of competent jurisdiction, is valid, unless the decree be void, although it may be reversed. (*Bustard vs Gates*, 4 *Dana*, 438; *Lampton vs Usher's heirs*, 7 B. Monroe; *Harrison vs Hord*, 12 B. Monroe, 472.)

The suit had been pending upwards of three years when Middleton purchased the land in contest, and it was about two years afterwards that Donaldson made his purchase at the decretal sale. The suit might have been prosecuted with more vigilance and dispatch. It is not necessary, however, in order to retain the character of a *lis pendens*, that a suit

1. The reversal of a decree in chancery, under which a sale of land has been made, does not ordinarily vacate and render void the sale, though the complainant in the suit be the purchaser. (8 *B. Monroe*, 105.) The general rule is, that the sale is valid where it is made under the decree of a court of competent jurisdiction, unless the decree be void, altho' it may be reversed. (4*Dana*, 438; 7 *B. Mon.* 57; 12 *Ib.* 472.)

2. To maintain the benefit of a *lis pendens*, it is not necesary that the suit should be prosecuted with even ordinary diligence; it can be lost only by unreasonable and unusual negligence in its pro-

GOSSOM
*vs.*
DONALDSON.

secution; such
was not the case
in the suit here
referred to, and
the purchaser is
to be regarded
as a *lis pendens*
purchaser, and
bound by the
decree.

should be prosecuted with even ordinary diligence, but as a *lis pendens* is created by the institution of the suit, it can only be lost by unusual and unreasonable negligence in its prosecution. Considering the nature of the controversy, in which a question of fraud in the execution of a deed of conveyance was involved, there was not such *laches*, in our opinion, in the prosecution of the suit in which the decretal sale was made, as would operate to exonerate Middleton from his liability as a *prudente lite* purchaser; but having purchased during the pendency of the suit he and those claiming under him are bound by the decree and sale that were made in the case, consequently the title of Holdensby Dixon to an undivided sixth part of the four hundred acres, of which his father was the patentee, vested in the purchaser at the decretal sale, and Middleton acquired no right or title to it by his purchase, or at least any right or title he did acquire was subordinate to that with which the purchaser at the decretal was invested.

3. One who enters under the junior title, having the elder and superior equity, cannot fortify his possession against a joint owner by acquiring the elder legal title.

Nor can the defendant rely upon the elder legal title of Sharp to defeat a recovery by the plaintiff. The land has been held under the title of Dixon, and it was by virtue of the elder and superior equitable right to it, which the claim of Dixon conferred, that the elder legal title was acquired. The equitable right with which those who claimed under Dixon was invested, was superior to the equitable right derived under Sharp's claim, and therefore the elder legal title under the latter had to yield to the elder and better equity under the former. The owner of the right, under the Dixon claim, has therefore clearly the best title to the land. The possession of the defendant was obtained under this claim, and under and by virtue of it the legal title was acquired. He therefore still holds it under the Dixon claim, and his right to it, as against the plaintiff, is not in the least degree strengthened or fortified by the acquisition of Sharp's elder legal title.

The most material defense relied upon, however,

is that based upon the statute of limitations; and as this presents the most important question in the case, it will be necessary to examine carefully the facts upon which it arises and its decision depends.

The defendant entered and took possession under his father, William Gossom, in the fall of the year 1828, and has held the possession ever since. He made the entry under a purchase from Middleton, who had purchased from Dixon's heirs. Gossom purchased and claimed the whole four hundred acre tract, and by his entry upon it acquired the possession of the whole of it. Whether either he or his vendor had title to it is not material, so far as the question of possession is concerned.

As he was evidently in possession to the full extent of his boundary, the next inquiry is, what was the character of his possession, was it amicable or adverse to Dixon's heirs? So long as Middleton looked to the heirs for a title the possession of his vendee was in law deemed amicable, but so soon as the deed of the 15th of November, 1829, was executed, which purported to convey to him, in conjunction with the previous deed, the title of all the heirs, the possession of Gossom became adverse to the heirs as well as to all other persons except Middleton, his vendor; and after the execution of the deed of 1833, by Dixon's heirs to Gossom, his possession was adverse to all the world.

The possession taken by Gossom was not confined to any part of the tract, but extended to all of it. He did not claim the undivided interest of any one of Dixon's heirs, but claimed the whole land as his own. The entry on land of one joint owner enures to the benefit of all the owners, the legal presumption being that the entry was made according to the right of the party making it, and for the purpose merely of taking possession of his undivided interest. In such a case the possession is not adverse to the other joint owners, and will only become so by a denial of their right or some act or declaration in-

---

GOSSOM
*vs.*
DONALDSON.

5. An entry upon land under a purchase is amicable, with the right of the vendor so long as the vendee looks to the vendor for title; but so soon as a deed is made the possession of the vendee becomes adverse to all the world, and when continued for twenty years it bars the suit to recover the possession.

4. The entry of one joint owner upon land enures to the benefit of all the joint owners; and such a possession is not adverse to the right of the other joint owners, and will not become so unless accompanied by some open public act denying their right, of which they are informed.

consistent therewith, of which they are apprized. Here, however, the person by whom the entry was made claimed the whole and not an undivided interest or share in the land only, and therefore no presumption could arise that his possession was not adverse to all of Dixon's heirs.

It is contended, however, that by the partition of the land among Dixon's heirs, which was made in November, 1829, the part allotted to each one was thereafter held in severalty, and Gossom did not, after the partition was made, have possession of the part which was allotted to Holdensby Dixon until he subsequently entered thereon and took possession of it, which did not occur until within a few years previous to the commencement of this action. If the entry of Gossom had been made after the partition had been decreed and carried into effect, his possession might not have extended beyond the share upon which the entry was made.

It must be recollected, however, that Gossom was in the possession of the whole tract, claiming it adversely to Dixon's heirs at the time the partition was decreed—the deeds of conveyance from said heirs to his vendor, Middleton, having been previously executed. This possession was not divested by the partition, although it might have been divested under the decree of the court. The right to hold in severalty was conferred by the partition, but it did not, of itself, operate to change the character of the possession, or to oust that which then existed. Gossom was bound by the decree, and the purchaser at the decretal sale was invested, by his purchase and the commissioners deed made in pursuance thereof, not only with the title of Holdensby Dixon to that part of the land which was allotted to him in the division, but also with the right to the possession thereof in severalty. Gossom, however, had the actual possession, although the purchaser had the right of possession. The fact that Gossom's vendor was a *pendente lite* purchaser did not alter the nature of the

possession. It was adverse to the right of Dixon's heirs when the decretal sale was made, and continued adverse to the purchaser after that time. The only estoppel created by the decree was that which denied to Gossom the right to contest the title of the purchaser at the sale made under it, to the land he had purchased. Gossom could not do that, because he claimed under a *pendente lite* purchaser, who was bound by the decree. This estoppel, however, only continued during the time that the plaintiff's right of entry existed. Whenever it was tolled by the lapse of time the estoppel ceased, and the defendant had a right to rely upon his adverse possession as a bar to the plaintiff's action.

A cause of action against Gossom accrued to the purchaser under the decree, when he obtained his deed in November, 1829. Gossom was then in the adverse possession of the whole tract of land. This action was not commenced until the month of May, 1855. During all that time the defendant remained in possession, claiming the whole of the land as his own. More than twenty years elapsed after the rendition of the final decree in the suit in which the sale and partition were made, before this action was brought. This delay is wholly unaccounted for, and nothing has been manifested which can have the effect to take the case out of the operation of the statute of limitations, or to authorize the action to be maintained after the lapse of so many years, and a continued adverse possession during the whole time. The claim has become stale, and is not entitled to any favor in a court of equity.

Wherefore, the judgment is reversed, and cause remanded, with directions to dismiss the petition of the plaintiffs.