CASE 15—ACTION TO RECOVER LAND—FEB. 27.

# Pope, &c., v. Brassfield, &c.

### APPEAL FROM WHITLEY CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFFS APPEAL. REVERSED.

ADVERSE POSSESSION—VENDOR AND PURCHASER—PURCHASE FROM PART
OF SEVERAL JOINT OWNERS—CO-TENANTS—RUNNING OF STATUTE
AGAINST MARRIED WOMEN AND INFANTS—IGNORANCE OF RIGHTS.

Held: 1. Where a title bond purporting by its terms to be the obli-
gation of several joint owners of the tract of land referred to
therein was not signed by all the owners named in the bond, the
possession of the obligees, who claimed the entire tract of land,
was adverse to the owners who did not sign the bond, and also
to one of the signers who was a married woman, and therefore
not bound.

2. As ignorance of one's rights does not prevent the running of the
statute, the fact that the owners upon whom the bond was not
binding erroneously supposed, as did the obligees, that their
father, who signed the bond, had a life estate, did not prevent
the statute from running against them.

3. The purchasers, having acquired an equitable title to the shares
of the owners upon whom the bond was binding, became tenants
in common with the other owners.

4. Though two of six tenants in common held the land adversely to
the others, some of whom were under no disability, the statute
did not run against such of the others as were under the disa-
bility of coverture, as the rule that, where a right of action ac-
crues to parceners or joint tenants some of whom are under no
disability, the statute runs against all, notwithstanding the disa-
bility of the others, has no application even if it exists under our
present statutes, as the right of each of the joint owners was
distinct, and each might have sued separately.

5. One of several vendors being an infant at the time she undertook
to convey, the possession of the purchaser did not become ad-
verse to her until she became of age, her obligation to convey
not being broken until then, and as she was then, and has ever
since continued to be, a married woman, the statute has never
commenced to run against her.

Pope, &c., v. Brassfield, &c.

R. D. HILL, ATTORNEY FOR APPELLANT.

James M. Pope's wife, Eleanor, was the daughter of Joshua Tye, and she died before her father, leaving her husband and six children surviving her. After her death, her father, Joshua Tye, died, leaving certain land, which was allotted to his heirs. James M. Pope, believing he was entitled to the share of his wife during his life, the part belonging to her six children was laid off to Jas. M. Pope, and this land he sold to Brassfield and Nelson Tye, who, and their vendees, have held and claimed the same for more than fifteen years before the bringing of this suit by the children of Jas. M. Pope, after his death. and the question is, whether the vendees of James M. Pope, knowing that he had these children by his wife, Eleanor, which the deed or bond shows, can claim the land adversely by fifteen years' possession so as to defeat a recovery by said children? We think not.

## AUTHORITIES CITED.

Chism v. Trent, 10 Ky. Law Rep., 849; Burch v. Jones, 9 Ky. Law Rep., 458; McCain v. Edwards, 6 B. Mon., 208; Am. & Eng. Ency. Law, 2 ed., vol. 1, 796, and authorities cited; Strother v. Syrus, 5 Ky. Law Rep., 58; Haffendorfer v. Gault, &c., 84 Ky., 128.

C. W. LESTER, ATTORNEY FOR APPELLEES.

The appellants claim that they are the owners of two certain tracts of land in Whitley county, which appellees wrongfully hold from them. They claim that this land descended to them from their grandfather, Josuha Tye, who died after the death of their mother, and that their father, who sold the land to Brassfield, and Tye, never had any interest therein.

The appellees herein, bought and paid the full value of this land from the father of appellants, and the facts proven lead to the conclusion that the appellants themselves have been fully paid for their interest in this land and they had full knowledge of the sale thereof by their father, but some of them being then and now married women, they plead and rely upon coverture to defeat the running of the statute. The three male plaintiffs labored under no such disability, when appellees took possession, and we contend that the statute of limitation began to run against all of them where the land passed into the adverse possession of appellees, June 7, 1872, and was so held for more than twenty years before the bringing of this suit.

AUTHORITIES CITED.

2 Statute Laws, secs. 1, 2, 3, p. 1131; McIntire's Heirs v. Funk's Heirs, 5 Littell, p. 36; Riggs v. Dooley, 7 B. Mon., 236; Moore v. Colvert, 6 Bush., 358.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellants filed their petition in equity in this case on January 14, 1892, in which they alleged that they were the only children and heirs at law of Eleanor Pope, deceased, and as such were the owners and entitled to the possession of the two tracts of land in controversy, containing together 208 acres; that appellees, without right or title, were in possession of the land, and had so held it for more than a month. They prayed judgment for the land and $50 damages. Appellees, by their answer, denied that appellants owned the land, and alleged that Eleanor Pope left surviving her James M. Pope, her husband, who had a life estate in the land, the remainder being vested in appellants; that she died about the year 1855, and on June 7, 1872, James M. Pope, the surviving husband, and appellants sold the land to Nelson R. Tye and A. J. Brassfield for $400, who took from appellants and James M. Pope a title bond whereby they bound themselves to convey the land to Brassfield and Tye when the purchase money was paid; that the purchase money had been paid, and that no deed had been made, but that the vendees had been in possession of the land adversely to all the world since the sale, and limitation was pleaded in bar of recovery of the land. The bond referred to which was filed with the answer is in these words: "Know all men by these presents that we, James M. Pope, husband of the late Eleanor Pope (formerly Eleanor Tye), and Henry S. Pope, Burgess Elliott and Martha E. Elliott (formerly Martha E. Pope), Hiram Foley and Nancy Ann

Foley (formerly Nancy Ann Pope), Joshua T. Pope and Samantha, his wife, James A. Pope and Mary E. Pope,— the latter of whom is under twenty-one years of age, but her father James M. Pope becomes responsible for her performance of this obligation,—have sold, and do hereby sell and obligate ourselves to convey, or direct the commissioner to convey, unto Nelson R. Tye and A. J. Brassfield our entire interest in the home farm of Joshua Tye, deceased, for and in consideration of four hundred dollars; eighty-five dollars in hand paid, one hundred and fifteen dollars due and payable the tenth day of July, 1872, and two hundred dollars to be paid in good property, valued at cash prices, and due and payable the first day of November, 1872; and we obligate ourselves to make said conveyance when the purchase money is fully paid. Henry S. Pope, Burgess Elliott, and Martha E. Elliott being non-residents, their father, Jas. M. Pope, obligates himself herein that they will convey, or authorize him to convey, in accordance with this bond. Given under our hands this June 7, 1872. Jas. M. Pope. Hiram Foley. James A. Pope. Joshua T. Pope. Nancy Foley." Appellants, by their reply, denied the execution of the bond, and pleaded that some of them were at the time married women, and others infants, and alleged that they had received no part of the consideration. About a year and a half after this reply was filed, appellees filed an amended answer, based on some proof that had been taken in the case, in which they alleged that Eleanor Pope was the daughter of Joshua Tye; that she died in the year 1855; that her father died thereafter about the year 1860; that he owned the land, and it descended from him not to her, but to her children; that her surviving husband took no interest in it at her death; and that they had been in

adverse possession of the land since June 7, 1872. The proof shows that Mrs. Pope died before her father, and that the land descended from him to the grandchildren. It also showed she left the following children, all of whom are appellants in this case: Henry S. Pope, born December 16, 1839; Joshua T., born April 13, 1843; Martha Elizabeth (now Elliott), born October 8, 1845; Nancy Ann (now Foley), born November 12, 1847; James A., born August 9, 1849, or according to his testimony, 1852; Mary Eleanor (now Bain), born June 26, 1855. It thus appears that all of the children were of age on June 7, 1872, except the last two, and from the recitals of the title bond signed by James A. Pope at that time, as well as the other evidence in the case, we think the preponderance of the testimony shows he was then of age. The infant Mary Eleanor was married to G. P. Bain on December 10, 1874. Mrs. Elliott and Mrs. Foley were both married women in 1872, and their coverture still continues. Henry S. Pope was a non-resident of the State and did not sign the bond. Joshua T. Pope and James A. Pope deny signing the bond, but we think the preponderance of the proof shows that they did sign it. The proof also shows that the land was paid for by Brassfield and Tye within a year after the sale, and there is some testimony that Joshua and James A. Pope got a part of the purchase money, although the evidence on this point is rather vague. The father, James M. Pope, died about two months before this suit was brought, and, if he had held a life estate in the land, the statute of limitation would not have run against the children in his lifetime. But, as his wife, Eleanor died before her father, she had no title to the land, and her husband, as the survivor, took no interest. It would seem from the evidence, as well as the pleadings, that this fact

was overlooked by both the parties. The title bond is binding on James A. Pope and Joshua T. Pope, and no recovery can be had by them of their interest in the land. But it is void as to Henry S. Pope, who did not sign it; as to Nancy Foley, who signed it, but was then a married woman; so as to Martha Elliott, who was also a married woman, and did not sign it; and as to Mary E. Pope, then an infant, now married, who also did not sign it. As to these four children the only defense is the statute of limitation, and the first question to be decided is, was the holding of appellees adverse to them under the circumstances?

In Sprigg's Heirs v. Albin's Heirs, 29 Ky., 162, it was held by this court that an occupant under a title bond did not hold adversely to his vendor, and that limitation would not run in his favor. The court said: "It is conceded that twenty- years' continued possession of land being shown creates a legal presumption that the occupant has title. But this presumption is not of that absolute and conclusive character which will admit of no explanation. The law, from motives of sound policy, does in some instances create and sustain artificial presumptions which admit of no contradiction or explanation. Thus the rule that possession of goods remaining with the vendor after an absolute conveyance is *per se* fraudulent in respect to creditors, can not be avoided or contradicted by any proof as to honesty of intention on the part of the vendor. But we know of no artificial presumption which establishes a positive rule requiring courts and juries to regard the occupant of lands as possessed of an absolute title merely because he and those under whom he claims have continued in possession for twenty years. On the contrary, it is well settled by authority that the

nature of the possession, whether it be adverse or friend-
ly, may be shown by proof; and, if friendly, then the pre-
sumption of title resulting from the mere fact of con-
tinued possession is destroyed.  No length of possession
will invest a tenant or *quasi* tenant with the title of his
landlord."  This case was followed in Beal v. Brooks'
Ex'rs, 30 Ky., 232; Myers v. Buford, Id., 250.  The sound-
ness of the rule was recognized in Henderson v. Dupree,
82 Ky., 678, but in that case the court also said: "A
purchaser by title bond or executory contract, although
a *quasi* tenant, or even a tenant, may, by disclaiming the
relation, and by notoriously claiming to hold adversely
to his contract, or by actual notice to the landlord or ven-
dor to that effect, holds adversely in fact."  In Com. v.
Gibson, 85 Ky., 666, (4 S. W., 453), it was held that one
who enters under parol purchase or gift, and holds the
land by actual open possession, claiming it as his own
for the statutory period, is protected by the statute.  This
case was followed in Thomson v. Thomson, 93 Ky., 435,
(20 S. W., 373), and in Creech v. Abner, 20 R., 1812; 50 S.
W., 58, this court said: "It is a well-settled rule of law that,
as long as the vendee looks to his vendor for title, his pos-
session is not adverse, and that he can not avail himself
of possession under such a contract to prove his title.
A parol contract for the sale of land is not enforceable,
and the vendee acquires no title whatever to the land
by virtue of such sale; but all the modern decisions of
this court sustain the doctrine that a party may by parol
purchase land, and enter upon the same, and he may then
openly and notoriously hold, claim, and occupy the same
adversely to all the world; and that such adverse holding
and occupancy will ripen into a perfect title in fifteen
years unless the statute is suspended or extended on

account of the disabilities of the holder of the legal title. In other words, when the vendee has so held during the statutory period necessary to vest in him the independent title to real estate, his title will in like manner become perfect, although he first entered under a parol contract." The rule that a tenant or *quasi* tenant, who openly claims the land as his own, will, after a great number of years of such possession, be protected by the statute, has often been recognized by this court. See Ogden v. Walker's Heirs, 36 Ky., 420; Chambers v. Pleak, 36 Ky., 426; Morton v. Lawson, 40 Ky., 45; Turner v. Davis' Admr. 40 Ky., 151; Farrow's Heirs v. Edmundson, 43 Ky., 605. In accordance with this principle it is held that, though ordinarily the entry of one tenant in common and a holding by him will be for the benefit of all, one tenant may, by openly and notoriously holding and using the land as his own, oust his co-tenants and acquire a title to the property by prescription. Gossom v. Donaldson, 57 Ky., 230; Greenhill v. Biggs, 85 Ky., 155, (2 S. W., 774), and cases cited. So it is also held that, where one parcener or tenant in common conveys the joint property to a third person, the grantee, claiming the whole in severalty, holds adversely to the other joint owners. Larman v. Huey's Heirs, 52 Ky., 436. In this case appellees notoriously held and used the land as their own for more than twenty years before this suit was brought. Neither Henry S. Pope, Martha Elliott, nor Mary Bain signed the bond; and, while their names are set out in the bond as vendors, it imposed no obligation on them, and the holding of appellees, so far as they are concerned, must rest upon the same plane as a holding under a verbal contract. The same rule applies to Mrs. Foley, who, though she signed the bond, was then a married woman. The writ-

ing imposed no obligation upon her, and was utterly void as to her, she being without power to make such a contract. It is true, the bond shows on its face that these four children had an interest in the land. But it is in legal contemplation, on the whole, the bond of the signers, except Nancy Foley, by which they bound themselves that the land should be conveyed to the vendees. We are, therefore, of opinion that their possession of the land was adverse, and that the statute ran in their favor against the other four children who had not signed or were not bound by the bond. The holding of appellees was not of a life estate, or merely under a life tenant; and, even if it be conceded that all the parties thought that the father, James M. Pope, had a life estate in the land, this would not stop the statute, for ignorance of one's rights does not prevent its running. Commissioners v. McDowell, 6 Ky. Law Rep., 520; Perry v. Elgin, 15 R., 885 (26 S. W., 4). It follows, therefore, that appellant Henry S. Pope is barred by the statute, and that the judgment of the court below as to his interest and that of Joshua T. Pope and James A. Pope is correct.

It remains to be determined whether the married women are also barred, notwithstanding their coverture. It is insisted for appellees that, where a right of action accrues to parceners or joint tenants, if some are under no disability the statute runs against all, notwithstanding the coverture or infancy of the others; and Moore v. Calvert, 69 Ky., 356, and the cases there cited, are relied on as sustaining this conclusion. Whether the doctrine of that case should be followed under our present statutes, taking them all together, we need not determine, as it clearly does not apply to this case. Appellees had a title in equity to the shares of Joshua T. Pope and

James A. Pope, and were, therefore, tenants in common in the property with the other four children. The right of each of these four children to one-sixth of the property was distinct. Each of them might have maintained an action separately in his own name against appellees and the other children for the protection of his rights. When this right of action accrued, the two married women, being under disability by the express terms of the statute, are not barred by it during their coverture. Kentucky Statutes, section 2506; Riggs v. Dooley, 46 Ky., 236. Though the infant Mary E. Pope, now Mrs. Bain, was not married when the bond was given and appellees entered upon the land, they entered under a contract that he would convey, and this obligation was not broken until she became of age. The possession of appellees was not, therefore, adverse to her until she was of age. Before she became of age she married, and when she did not convey after her majority, and the possession of appellees became adverse, she was a married woman, and the statute did not run against her. We are, therefore, of opinion that Mrs. Elliott, Mrs. Foley, and Mrs. Bain are entitled to their share of the land, and that the court below erred in not adjudging it to them. Judgment reversed, and cause remanded for a judgment and further proceedings not inconsistent with this opinion.

Petition for rehearing overruled.