Chief Justice Robertson
delivered the Opinion of the Court.
Masterson O&den prosecutes this appeal from a judgment for eviction, obtained against him on the demise of Walker’s heirs, in an action of ejectment, instituted in the year 1834, for land held and occupied by Walker, at his death, under an executory contract of purchase from Alexander Montgomery, a patentee thereof, and which the executors of the decedent, in virtue of a power vested in them by his will, sold, in the year 1800, to Ogden, who, in the same year, entered under his contract, and has continued to occupy the land ever since.
By his contract, Ogden was to pay one hundred and seven pounds to the executors — which he did after-wards pay, and was, also, to pay seventy three pounds to Montgomery, which still remained due from the testator, for the same land, and which Ogden was to pay whenever Montgomery should make a title; and it was agreed, also, that, until the executors should make to him a conveyance of the legal title, he should retain the possession and use of the land, “ by paying the use of the whole money that said Walker paid to the said Montgomery.”
In the year 1809, Ogden not having paid any part of the seventy three pounds, Montgomery filed a bill in chancery against Walker’s executors, for a decree therefor, in consequence of an accidental loss of Walker’s bond. But the decree sought by the bill having been resisted by the ■ executors, on the twofold ground that, they doubted Montgomery’s title,, and moreover, were not bound by the terms of the contract'to pay the seventy three pounds until after one year from the time of his making a sufficient conveyance with general war-, ranty — which had never been done — the Circuit Court dismissed the bill absolutely, in the year 1811.
Instruction — upon which the questions for decision arise.
Tho’ the vendor equitable'title, the purchaser who entered under hitn, looking to him to procure and convey the legal title, is estopped from denying that his vendor was, or that his heirs are, entitled to tho possession whenever he renounces his tenure under them —unless they consented to the renunciation; or unless he, with tjieir consent, has acquired a superior title; or unless, having, with their knowledge, abandoned his allegiance to them, he'has hej| adversely for 20 years. But—
Afterwards, Ogden having been told by the executors, in the year 1813, in answer to a demand then made for a title, that they were “ unable to make a deed” — brought an action for damages on their covenant, in 1821, and in the year 1826, obtained-a judgment for upwards of eight hpndred dollars.
On th*e trial of this ejectment — after the foregoing facts hqd been proved, and other facts also had been proved, conducing to show that an elder patent of one Sprigg included a part of the land sold by Walker’s executors to Ogden, and that Ogden had disclaimed holding under his contract about five years before the commencement of the suit — the Circuit Court refused to admit documents offered by him, for the purpose of showing that he had purchased Sprigg’s title; and thereupon, instructed the jury that, they should find a verdict against him, if they should believe that he had entered under his contract with Walker’s executors, and had retained the possession of the land ever since, and that Walker was in possession at the time of his death, under his contract with Montgomery.
As the rejected documents were not sufficient to pass Sprigg’s title, and were, moreover, not sufficiently proved, this Court will consider only one question, in revising the judgment of the Circuit Court; and that is, whe-. ther there was any error in the instruction just noticed.
The .only objections to the instruction are, first — that it excluded from the jury all consideration of the question whether Ogden had, in fact, held adversely to the lessors of the plaintiff, for twenty years next preceding the institution of this suit; and, secondly — that, if he did not, or could not, so hold, he was entitled to notice to quit, which the instruction necessarily denied.
But neither of these objections can, in our opinion, be considered availing.
I. It is evident that, though Walker’s title was only equitable, Ogden obtained the possession of the land *422 from his executors, entered under his title, knowing its character, and looked, when he entered, to his executors,- and to them alone, for a procurement and conveyance to himself of the legal title of Montgomery. And upon these facts, there can be no doubt that he is estopped, by his entry and continued occupancy ever since, from denying, either that Walker had, and was entitled to have, the possession of the land, or that Walker’s heirs were entitled to a restitution of that possession, whenever he renounced his tenure under them — unless they had consented to that renunciation, or unless he had, with their consent, acquired a right superior to theirs, or had, with their knowledge, abandoned his allegiance to them, and held adversely to them, at least twenty years before they commenced this ejectment.
Where a quasi tenant, who has notified his landlord that he has renounced the contract, & will hold, not under, but against him, has so held for 20 years after the notice, the statute of limitations will protect him. Vide page 225. But—
In the absence of proof to the contrary ^beholding of a quasi tenant, or trustee, will always be presumed to he as it was when he entered — under, not adverse to, his landlord.
Although it is a sound and well settled rule of law, that a quasi tenant shall not dispute the title of his landlord, as long as the contract subsists and is recognized between them, nevertheless, if the landlord shall have been notified by such a tenant, that he has renounced the contract, and will not continue to hold under him longer, but will hold against him, and - the tenant shall, after such a virtual eviction, continue an adverse possession in fact for twenty years, he may be protected in that possession by the statute of limitations. The doctrine to that effect in the case of Willison vs. Watkins, (3 Peters’ Rep.) is, in our judgment, perfectly consistent with the true principles and analogies of the law. In the absence of proof to the contrary, the possession of one who entered as Ogden did, will always be presumed to be as it was at first — under, and not against, the right of him under whom he entered. So will the continued possession of one entering as trustee be presumed to be that of trustee only, and not therefore hostile to the right of the beneficiary. But, upon satisfactory proof of a tortious and actually adverse possession, in his own personal and exclusive right, for more than twenty years, he may rely availably on the statute of limitations. And, a fortiori, a quasi tenant, under the like circumstances, may avail himself of the same protective defence.
A bill was filed to recover a balance due for land, which had not been conveyed; deft's resisted on the grounds, of defects in complainant’s title, and that they were not bound to pay till one year after the deed should be made; and the bill was dismissed absolutely: held that this was no evidence of a rescission of that contract, nor of one by which the def’ts had sold the land to another. And a demand by the latter, of a deed, afterwards,is sufficient proof that he had not then renounced his contract, but still held under it.
If, therefore, there had been any'fact before the jury, which could have authorized the deduction that Ogden had, for more than twenty year’s immediately preceding the commencement of this suit, renounced his contract with the executors, and held the land adversely in fact to the lessors of the plaintiff, and with their knowledge, the instruction w.e are considering would have been erroneous. ’ But there was, in our opinion,-no such fact.
The .dismission of Montgomery’s bill-against the executors ofjVValker, was not a rescission, either actual or virtual; of .the contract of sale between- Montgomery and Walker.* Nor áoes the record of that case contain any fact which would authorize the presumption-, that Walker’s heirs or executors had ever abandoned their equity .arising from that contract, or that they, or any of them, intended' to abandon their contract with Ogden. There was sufficient cause for resisting a decree for the seventy three pounds, without renouncing the contract, either with Montgomery or. with’ Ogden. And, in fact, Ogden’s failure to have paid that debt was thq-only cause of Montgomery’s bill. But, moreover, Ogden’s application to the'executors fora title, in 1813, nearly three years after Montgomery’s bill hail been dismissed, is sufficient proof of the fact that he did riot then consider his contract either rescinded or waived, and of the fact, also, that he then was holding the land under that contract. And after that time, there is ncv evidence-whatever of his changing the character of his possession, or of his renouncing his claim to a conveyance from the executors prior to the institution of his action for .damages for non-conveyance. Nor does the record contain any fact tending in any degree to show that, until'after the year 1826, he claimed any other right to the land than that derived from the executor*, or^retended to hold the land adversely to the right of Walker’s heirs, or' that either they or the executors had, actually or virtually, given any authority or assent to any such holding, or independent claim, or had even an intimation that he was holding, or intended to hold, adversely to them.
If Ogden had bought Sprigg’s title, it covered only about fifty acres of the land he had bought from Walker; *424 and, as he bought from Sprigg (if at all,) in the year 1812, before he demanded a title from the executors, it is evident that he,'nevertheless, obtained it merely for security, and still held under Walker’s heirs afterwards.
The vendor of land owed £73 for the land, to be paid one year afteratitleshould be made to him, and which his vendee covenanted to pay. Several years after-wards, the £73 remaining unpaid, the last purchaser deman ded a deed,which the representatives of his vendor, who was then dead, were, of course, unable to make: the purchaser, not having paidthe £73, had then no right to expect the deed, / and his failure to obtain it, did not authorize him to renounce his allegiance to the equitable title, under which he entered.
Neither the failure to make a title when demanded, in 1813, nor the reason given for it, that is, that the executors were unable to make a title, implied more than what Ogden had known for years before — that is, that the title was in Montgomery, and must there remain until he himself would pay the £73 still due to him from Walker, and which he (Ogden) had undertaken, by his contract, to pay, but never offered to pay.
When he bought the land from Walker, Ogden knew, not only that the title was in Montgomery, but that it would remain in him until’that sum should be paid; and he, not only agreed to pay it, but covenanted also to hold the possession, of the land as acquired from Walker, and to pay, forthe use of it, the interest on the sum Walker had paid to Montgomery, until Montgomery, after the receipt of the £73, should convey the title to the executors, or to himself at their instance. Failing, therefore, to do that which he had covenanted to do for obtaining the title, and the doing of which was indispensable to the procurement of it, Ogden had no right to expect a title from the executors, in 1813, when he demanded it; nor did their failure and inability then to make the title, either absolve him from his obligations of fidelity to them, or imply an abandment by them of their contract with him, and an . authority to him to purchase another and adversary title, whereby they would have given to him the use of the land for thirteen years, and surrendered the .entire benefit of their contract with him, without consideration, and without motive.
Montgomery has seemed to consider the contract as still subsisting between himself and Walker, and has seemed to manifest an intention not to seek either rescission or reclamation; because he has neither conveyed the title to Ogden, nor asserted any claim to the use or possession of the land.
And certainly the record contains no intimation that Ogden even intended, before 1826, to hold adversely to *425 the executors, or that, if he did, they were acquainted with the fact, or had even any reason to apprehend it, and acquiesced.
To enable a quasi tenant to avail himself of the statute of limitations against his landlord, there must be cleat-proof of his renunciation, and notice of it to his landlord, 20 years before.
A tenant who has renounced his allegiance, and assumed an attitude hostile to his landlord, is not entitled to notice to quit; nor is a demand of possession necessary, to sustain an action against him.
Upon such facts, had the jury, without any instruction from the Court, decided that Ogden had, for twenty years before this suit was brought, held the land adversely to the executors, and with their knowledge and acquiescence, it would, in our opinion, have been the duty of the Court to set aside the verdict, as being clearly unauthorized by the evidence.
A renunciation of the contract ydth the executors, and an adverse possession in fact by Ogden, for twenty years afterwards, with the knowledge of his vendors, should not be presumed, but must be proved by clear and satisfactory facts conducing necessarily to that conclusion.
We are therefore of the opinion that the instruction we are now considering, was, as given to the jury, right and proper.
II. Ogden’s renunciation of his tenure, and open denial of the right of Walker’s heirs and executors, about five years before this action wAs commenced, rendered a notice to quit, or demand of possession, unnecessary to the right to maintain the suit against him. By his own hostile acts and declarations, he had become a trespasser, within touch less than twenty years prior to the commencement of the action. It is unnecessary, therefore, to consider any other grounds for determining that, notice or demand was not necessary, to give the lessors a perfect right of action.
Upon the whole case, therefore, it seems to us, that Ogden has no just cause to complain that — after he had enjoyed the use of the land for thirty seven years, without paying much more than half- of the price he agreed to pay for it, and after rescinding his contract in 1826, and recovering back from the executors all that he had paid, and interest thereon for about twenty five years— he is now, though late, required to restore the land to the heirs whom they represented, and shall not be permitted longer to keep both land and money without retribution.
Wherefore, the judgment is affirmed.