## Morton, &c. *vs* Lawson.

ERROR TO THE GREENUP CIRCUIT.

*Adversary possession. Tenancy. Vendor and vendee.*
*Error. Evidence.*

JUDGE MARSHALL delivered the Opinion of the Court.

*October 23.*

THIS action of ejectment was brought upon the joint Plaintiff's title. and several demise of Josiah Morton, Wm. B. Eastin, M. Eastin, and Christy and wife, to recover a tract of land of about three hundred acres, in the possession of the defendant Lawson, part of one thousand acres, below the mouth of Tygart Creek, patented to the heirs of Edmond Taylor—Mrs. Christy, and the mothers of the two Eastins, being three out of ten of said heirs. There was some evidence conducing to prove that a division of the one thousand acres had taken place, by which three lots of about one hundred acres each, being the land in contest, had been allotted to the Eastins and Christy: but the question as to the quantum of interest which the plaintiffs had in the land in contest, being, as will hereafter appear, wholly immaterial as the case stands, nothing further need be said on that subject.

The main questions in the case, grow out of evidence proving that as early as 1797, Moses Fuqua was in possession of the land in contest, and claiming it as his own, offered to sell a part of it to one Dupuy, who was the witness in the cause, but afterwards admitted that he had got possession of it under an agreement with the Eastins and Christy, that he should hold it as an indemnity or collateral security against any loss which might happen in a tract of land sold to him by them, above the mouth of Tygart, being part of ten thousand acres patented to said Edmond Taylor and two others; that the said Moses Fuqua and others, claiming under or from him, have continued in possession ever since; that in 1807, he sold the land to his son William Fuqua, and conveyed it by a deed in fee simple, regularly recorded, which recites that he had purchased it from the Eastins, and that William Fuqua

*Facts relied on in the defence.*

then took the possession and held it, claiming the land as his own until 1817, when he sold it, and with others, conveyed it in fee simple, by deed regularly recorded, to Wm. Lawson, who took possession, and held it, claiming it as his own, until his death, from which time Wm. Lawson the defendant, his son, has held it as his own.

The suit was brought on the 31st day of August, 1836, upon a demise dated on the first day of January, 1836, and without any notice to quit or demand of possession prior to the date of the demise.

Verdict and judgment for defendant and motion for new trial overruled.

Several opinions of the Court in rejecting evidence offered by the plaintiff, and in giving, overruling, and qualifying instructions were excepted to during the progress of the trial; and the jury having found a verdict for the defendant, the plaintiffs motion for a new trial, on the ground that the verdict was against law and evidence and that the Court had erred in the various opinions above referred to, was overruled. All the questions relied on by the plaintiff, for the reversal of the judgment, are embraced in the inquiry whether the Court erred in overruling the motion for a new trial.

When the verdict was necessarily for defendant, on the facts, the jury were bound, it cannot be disturbed for any error of the court in giving or refusing instructions.

In pursuing this inquiry, we do not deem it necessary to examine the instructions in detail or even to state them; for if, upon facts which, from the evidence, the jury were bound to find, and the Court had a right to assume, the defendant was entitled to rely upon the statute of limitations from 1807, when William Fuqua entered, claiming the land as his own under the deed in fee simple from his father, or from any other period from which twenty years or more had elapsed before this suit was commenced, which was the effect of some of the instructions given, it is very clear that, upon the law and the evidence, the jury were bound to find for the defendants, and no error in giving any other instructions or in refusing any that were asked, can vitiate their verdict. We shall consider the case then upon the question whether the jury were bound to find for the defendants, on the ground of twenty years adverse possession, before the suit was commenced.

How possession originally received and held as quasi tenant may afterwards become adverse.

In thus considering the case, it is to be assumed in favor of the plaintiff, because the jury might have so found, that Moses Fuqua, prior to his offer to sell the land in

Morton, &c.
*vs*
Lawson.

1797, had acquired possession of it under the agreement before stated; and it is to be assumed on the part of the defendant, because the jury must have so found, that even at the date of that offer, he claimed the land as his own; that in 1807, he conveyed it by deed in fee simple, (in which he expressly claimed it as his own by purchase,) to William Fuqua, who openly entered upon it, claiming to hold the possession under the deed, independently and adversely to all the world; that in 1817 there was a similar conveyance and transfer of the possession from Wm. Fuqua to Wm. Lawson the elder, from whom it has been transmitted to the present defendant.

It is to be conceded, that by entering on the land in contest, under an agreement to hold it as an indemnity or collateral security, &c. the legal title not having, in fact, vested in him, Moses Fuqua became the tenant or *quasi* tenant of those from whom he received the possession, and as such was estopped to deny their title, and was bound to restore the possession to them, when, according to the terms of the agreement, his right to the indemnity should cease; and if it be conceded that the same estoppel devolved upon William Fuqua, if he entered within the terms, notwithstanding the open hostility to the landlord's title, which was manifested by the circumstances attending his entry, and that therefore an adverse possession from the date of his entry, cannot be set up to defeat the landlord's recovery. It must also be admitted, on the other hand, that it is to be presumed, in favor of so long a possession under claim of ownership, and in the absence of all proof of disability on the part of the original landlords or their heirs, the present plaintiffs, that the landlords were apprised of the state of the possession, and of its open transfer under a deed in fee simple, to a stranger to the original tenure, entering in hostility to them. And if these open acts upon the land, amounting to a renunciation of the tenure, with the knowledge of the landlords, do not themselves amount to such an actual disseizen or ouster of them as would fix the date of the adverse possession and of the commencement of the running of the statute of limitations, at the time of the transfer to William Fuqua, it seems to us clear that the

holding over by the tenant, after the expiration of the term, and after such open acts of renunciation and hostility to the landlords title, and with their presumed knowledge, must constitute such an adverse possession from the expiration of the term as will authorize the person so holding to rely upon twenty years continuance thereof as an absolute statutory bar to the landlord's subsequent entry. This position we consider as being amply sustained by the cases of *Willison* vs *Watkins*, 3 *Peters' Rep; Ogden* vs *Walker's heirs*, 6 *Dana*, 422–3; *Chambers* vs *Pleak*, *Ib.* 431–2; *Miller* vs *Shackleford*, 4 *Dana*, 286–8; and *Miller* vs *Shackleford*, 3 *Dana*, 289.

It is the duty of vendee of land, not adversely occupied, to take and hold the possession, and after the lapse of seven years, in which its occupancy would insure its safety, a pledge of other land, given him in possession as security against its loss, is discharged—

In such case, the possession of one who had in the mean time purchased the absolute estate of the pledgee in possession, & holding his absolute deed, and notoriously occupied and claimed the land as his own, was adverse to the pledgor, from the discharge of the pledge.

The question then arises, as to the duration of the term, or during what time was Moses Fuqua authorized to hold possession of the land in contest, under the agreement above stated? That agreement, vague and anomalous as it appears to be, must have a reasonable construction, and cannot be understood as giving to M. Fuqua any right to occupy the land in contest after the safety of the other land to which it refers should be ascertained. It was certainly Fuqua's duty, as the holder of an indemnity from the vendors, to use reasonable diligence and vigilance to prevent loss. There being no proof and therefore no presumption of adverse possession of the land sold, it was his duty to take and hold the possession of it. If he did so, there being no proof, and therefore no presumption of any suit by an adverse claimant or of any disability on the part of such claimant, the safety of the land was insured to him, and therefore, ascertained on the first day of January, 1816, by operation of the seven years statute of limitation, upon his possession from 1797; and his right to hold possession under the agreement, then absolutely ceasing, and the possession taken in open hostility to the landlords, having continued in like hostility to them for more than twenty years from that time, before the commencement of this suit, the general statute of limitations applies as a bar.

Nor is this conclusion affected by the supposition that M. Fuqua did not, in fact, take the possession of the land sold in 1797, or at any other period, which would have brought him within the protection of the statute by seven

years possession, prévious to the first day of January, 1816. For such a failure of duty, though it might have left the safety of the land sold still uncertain, could have given him no right under the agreement; and as his right to hold the indemnity could not have been extended by his own *laches*, it would have ceased on the first day of January, 1816, when, but for his *laches*, the safety of the land sold would have been ascertained. From that time then, he or his vendee, Wm. Fuqua, had no further right to hold the indemnity, of which fact, as well as of the continued adverse holding, after the first day of January, 1816, the *quasi* landlords must be presumed to have been cognizant; and on this supposition, as well as on that of Fuqua's having taken immediate possession of the land sold to him, the recovery in this action was barred by twenty years adverse possession, and the jury, on the evidence before them, were bound to find for the defendant.

It is contended, however, that the Court erred in refusing to permit the plaintiff to read, as evidence, the record of a former ejectment brought for the same land, on the demise of the present lessors, against Wm. Lawson, the father of the present defendant, and in which a verdict and judgment were rendered against the plaintiff. This record appears to have been introduced for the sole purpose of showing, that on the trial of that suit the defendant's counsel, in his presence and after the plaintiff had introduced evidence substantially the same as in this case, moved the Court to instruct the jury, that if they believed the possession of the defendant had been acquired from the lessors of the plaintiff, or those under whom they claimed, and had been continued by their permission, the plaintiff could not recover without a notice to quit.

It is sufficient to remark upon the facts thus offered to be proved, that the moving for such instructions on the plaintiff's evidence, is not only no estoppel upon the defendant in another trial, (as seems to be supposed,) but is not entitled to the slightest weight as proving that the defendant did, in fact, hold as the instructions hypothetically assume; and that his claiming in that case, that upon the plaintiff's evidence he was entitled to notice to

MORTON, &c.<br>*vs*<br>LAWSON.

Def't. in ejectment in a former action between the same parties, for the same land, having moved the court, on the plaintiff's evidence, to instruct the jury to find for the defendant, because there was no no-

tice to quit, is not evidence that defendant was plaintiff's tenant.

Not error that the court rejected competent evidence of a pertinent fact, when in its absence another occurred of the same effect in making out the *adversary's* case.

quit, cannot be used in this case as an admission, express or implied, that he was in fact entitled to notice. There was, therefore, no error in rejecting the record as evidence for the purpose stated, and we do not perceive that if admissible for any other purpose, it could have operated favorably to the plaintiff.

It is also contended, that the Court erred in rejecting the deed from the plaintiffs lessors, (and the ancestors of some of them,) to Moses Fuqua, for the land sold to him in the ten thousand acre patent, for the safety of which the land in contest was pledged to him. This deed was offered in connection with an offer also to prove that Fuqua had taken and held possession under it from 1797, and ever since. But as it is apparent that such evidence would have tended to establish what, in the absence of proof has been assumed, that the safety of the land was ascertained on the first day of January, 1816, a fact which is entirely favorable to the defendant, the plaintiff could not have been prejudiced by the rejection of the evidence.

The other evidence which was rejected relates merely to the quantum of interest held by the several lessors of the plaintiff in the one thousand acre patent, and could have been of no avail as they were not entitled to recover to any extent.

Wherefore, the judgment is affirmed.

*Hord and Beatty* for plaintiffs: *Payne & Waller and Apperson* for defendant.