Opinion on rehearing:
Cole, J.
The foregoing opinion was filed at the June term, 1870. A petition for rehearing was afterward submitted by appellant’s counsel, and a rehearing granted. The cause has now been again argued and submitted to the court. It was claimed by counsel for appellant that in the preceding opinion the finding by the court that the plaintiffs’ ancestor had entered into possession of the premises in October, 1842, about the date of the deed by Barrett to him, was in conflict with a fair construction of the plaintiff’s pleadings. "Without conceding or controverting this claim, we proceed to determine the questions made by appellant’s counsel upon his theory of the ease in this regard.
a..--claimof t!t“' ooloro I. It is claimed by appellant’s counsel that, in order to make the statute of limitations available as a defense in an action for the recovery of real property, the defendant or those under whom he claims must have tolcen and held possession under color of title, adverse to plaintiff, and such possession must have been continuous, peaceable, exclusive, uninterrupted and adverse, etc.; and it is further claimed in this case that the possession of the plaintiffs’ ancestor was not taken or commenced under an adverse title, but simply under a “settler’s right.”
Some statutes of limitation for the recovery of real *477 property expressly provide, that, to constitute a bar to the plaintiffs’ right of recovery at the time limited, the possession must have been taken and held \mder color of title; sometimes the statute requires the adverse possession to have been taken and held under a title deducible of record from the commonwealth to the parties in possession. As in the State of Kentucky, for instance, there was one statute limiting the right of action to twenty years; and another limiting it to seven years, where the party in possession had title and actual residence on the land. Under the former statute it was held, that an adversary possession of twenty years barred an ejectment without any paper title whatever, the statute not requiring it. Taylor v. Buckner, 2 A. K. Marsh. 18; Henedon v. Wood, id. 44; Chiles v. Jones, 4 Dana, 483. "While under the latter statute, it was held, that the adverse possession of seven years must have been by actual residence under a title legal or equitable. Anderson v. Turner, 3 A. K. Marsh. 133; Robinson v. Neal, 5 T. B. Mon. 214; Poage v. Chism, 4 Dana, 54. Yery many other cases hold the same doctrines as applied to the respective statutes. The same rule, which is well settled, could be illustrated by citations of authorities from many other States; but it is unnecessary. And in the same State it is also held, conformably to the rule in other States, that, to bar the plaintiff’s action under the twenty years statute, strict proof is required that possession was taken and held under a hostile claim. Gay v. Moffitt, 2 Bibb, 507. But it need not bfe under color of title', and, although it'is not, it is nevertheless transferal ble. Bowles v. Sharpe, 4 Bibb, 550.
Now, our statute of limitations does not require the person in possession to have color of title in order to bar an action by his adverse holding. It is in this respect like the Kentucky statute of twenty years limitation first above referred to. And, like that statute also, it requires that the possession shall be “ taken and held under a hostile *478 damn.” It is true, however, that a friendly possession taken as a tenant mcuy afterward become adverse; Morton v. Lawson. 1 B. Mon. 46 ; but in such case the limitation would only begin to run from the time the possession became adverse. The distinction between adverse possession under “color of title” and under a “hostile claim” finds a fair illustration in the statement of the case and the opinión of the court in the case of Clagett v. Conlee, 16 Iowa, 487. There the defendant himself testified “ that he never claimed any title, either decree title, tax title, sheriff’s title, nor any other kind of title, except the title or right of a settler or squatter; and that he had so informed the owners of the decree title ” under which the plaintiff in that action claimed. The court held “ that to constitute an adverse possession, it must be held under a damn of title,” following Jones v. Hockman, 12 Iowa, 101, and Wright v. Keithler, 7 id. 92. In the first two cases, the terms, “ color of title,” and “ claim of title,” are so used as to afford grounds for the possible construction that they were regarded as synonymous terms. But they are not such and were not so used; and a fair construction of the language is, that the defendant may rely upon either a color of title or a claim of title. To constitute the former, he must have a paper title, but the latter may exist wholly by parol.
As we understand the argument of the appellant’s counsel he claims that to constitute adverse possession the party must have taken and held possession wider color of tiñe. This is not the law as ruled by this court in the three cases above cited; and we hold, following them, that it is sufficient if such adverse possession 'was taken and held under a claim of title.
i_Wh en_ ongínañy yerse. We now turn our attention to the facts of this case respecting the character of the possession by which the plaintifi’s seek to fortify them title. Fi/rst: A wit. 011 ^6 P91’t ^16 plaintiffs, one John Kite, testifies inter alia that the plaintiffs’ ances *479 tor, Jeremy G-. Anderson, always claimed a perfect title to the land in controversy.' This testimony, in connection with the uniform current of the testimony of numerous other witnesses, that he did claim title to it, and the fact that he had paid quite a large amount of money (in those days) for the title under which he claimed, might afford a fair basis for finding as a fact that he entered upon and held the possession of the land in controversy under a claim of title.
Second: There is some evidence tending to show that the plaintiffs’ ancestor, before he entered on the land, acquired a title by purchase from a half-breed; claimant of the land, by the name of Burtis or Burket, —this, however, is slight. But the proof is clear and beyond a doubt, that on the 7th day of October, 1842, the said Anderson acquired a title to the land by purchase from one Barrett, who claimed to own the land by virtue of certain tax sales and deeds to him therefor; and, in March, 1843, one James Anderson conveyed the land to him by deed, in consideration, as alleged, of $1,500. These conveyances were duly acknowledged and recorded. Whether the first of these deeds was, as a matter of fact, made before the plaintiffs’ ancestor took possession of the land conveyed thereby, is in great doubt; the testimony shows that it was made before, and yet in view of the statements of the pleadings, it may be treated as made after the entry. But, as we have before seen, an entry made upon land, even under the title of the owner, may become thereafter adverse to such title and owner. It was said by Savage, Ch. J., in announcing the opinion of the court in Jackson v. Brink, 5 Cow. 483, “ The judge certainly misapplied the rule, that a possession to be adverse must be hostile in its inception. The rule is so laid down in Brandt v. Ogden, 1 Johns. 156, but has often been subsequently qualified, and is understood not to apply to the entry upon the premises; for it has often been decided that a possession taken under the true owner may, by a disclaimer of his *480 title, subsequently become adverse. 16 Johns. 301; 5 Cow. 14. It was certainly not necessary to'change the occupancy, in order to change the character of the tenancy or claim of title.” And the same court held in Jackson v. Johnson, 5 Cow. 14, “ that it seems when one enters under a contract for a deed with A. and afterward takes a deed from B., his possession from this time is adverse to A. and, if continued for twenty years, will bar A.’s entry.” Morton v. Lawson, 1 B. Mon. 46, supra. Under these authorities as well as upon principle, it seems to us that if the entry upon the land by plaintiffs’ ancestor was (as claimed by .appellant’s counsel) as a tresspasser and without color of title or claim of right, and therefore not adverse, that his possession became adverse from the time he placed the deeds to him for the land upon the proper-records of the county. That the taking and recording of such deeds operated as a notice to the owners of the- land that the grantee therein was no longer a trespasser upon the land, but an adverse claimant of the title thereto, and the statute would begin to run from that time at least.
5. — color of scent. Third. The proof shows that the ancestor entered into possession of the land, and continued to occupy the same up to his death; upon which event the title descended to the plaintiffs who are his heirs at law. Blackstone says that, “in every complete title to lands, there are two things necessary; the possession or seizin, and the righf or property therein. Now, if the possession be severed from the property, if A. has the jus proprietaüs, and B., by some unlawful means, has gained possession of the lands, this is an injury to A.; for which the law gives him a remedy by putting him in possession, but does it by different, means according to the circumstances of the case. Thus, as B., who was himself the wrong-doer, and hath obtained the possession by either fraud or force, hath only a bare or .naked possession without any shadow of right; A., therefore, who hath both the *481 right of property and the right of possession, may pnt an end to his title at once, by the summary method of entry. But if B., the wrong-doer, dies seized of the lands, then B.’s heir advances one step farther toward a good title; he hath not only a bare possession, but also an apparent jus possessionis or right of possession. For the law presumes that the possession which is transmitted from the ancestor to the heir, is a rightful possession until the contrary be shown; and, therefore, the mere entry of A. is not allowed to evict the heir of B.; but A. is driven to an action at law to remove the possession of the heir, though his entry alone would have dispossessed the ancestor.” Blacks. Com., 3d Book, marg. p. 176. See, also, 2 Hill, on Beal Prop. 159. Adams on Eject, ch. 3, p. 41, and notes; Smith v. Lorillard, 10 Johns. 338 (i. e.) 357; Tyler on Eject. 857. The substance of this doctrine, as shown by the authorities cited and others, is, that a descent cast or a devise gives color of title. So that if a trespasser and disseizor dies in possession, his heirs and devisees have color of title to the land so by him possessed.
Hence it would follow from any one of the three foregoing propositions, each of which is sufficiently sustained by the evidence, and a fortiori, from all of them, that these plaintiffs have color of title as well as claim of right to the land in controversy ; and that they have had continuous possession for the length of time requisite to bar the action under our statute of limitations is not controverted, but is conceded by appellant’s counsel.
6._defective tltleII. It is further claimed on the part of the defendant,. that since the tax titles sold by Barrett to Jeremy Gr. An-Person, were held and owned by Barrett at the time of the decree for partition among the owners of the half-breed tract was made, that they were, by force of the statute authorizing the partition proceedings and by the decree therein, extinguished or merged in the decree and cannot therefore constitute color *482 of title for the plaintiffs or their ancestor. This claim may be met with a three-fold answer: Fwst. It is not necessary that a title, in order to constitute a color of title so as to protect a party claiming thereunder by the statute of limitations, shall be a valid title; and it must be immaterial whether its want of validity results from its original and inherent defect, or from a matter transpiring subsequent to its origin whereby its validity was destroyed, or whether its want of validity is attributable to individual or judicial action. See Brooks v. Bruyn, 35 Ill. 392. Second. No color of title was necessary to be proved; the claim of right or title to the land was sufficient; and, Thvrd, The descent cast upon plaintiffs would afford color of title if the same was requisite.
III. It is further 'urged that continuous adverse possession by the plaintiffs, and their peaceable enjoyment of the premises was interrupted by the defendant and those under whom he claims, by asserting their title and by negotiations for the sale of the land to plaintiffs and their ancestor. We have no difficulty in agreeing with appellant’s counsel as to the general propositions of law asserted by him as bearing upon this branch of the ease. But we fail to find any thing in the evidence justifying or authorizing their application to this case. The testimony of one witness, who was a former owner, of his conversations with plaintiffs, while they were minors, about selling his interest to them, or their selling their interest to him, is quite too indefinite and uncertain in itself •, and, besides, it is directly contradicted by at least two witnesses. The same remarks apply equally to the repeated assumptions in the sixty-one pages of printed argument, that plaintiffs and their ancestor did not controvert the defendant’s title or assert their claim as adverse to it.
IY. As to the effect of the judgment for the recovery of the property, had by default at the suit of this defendant as plaintiff, against L. D. Hamilton, who married the *483 widow of J. G. Anderson, we need, perhaps, say no more than is contained in the opinion' upon the _ first hearing. And yet, in answer to the elaborate and astute argument upon the technical legal rights of Hamilton ■ in the real estate, whereby a judgment against him would bind it, this* single question may be pertinent: Suppose Hamilton had conveyed the property absolutely to Wright, what right to ■the property or its possession would have passed to the .grantee? The question suggests its own answer — none. Gould he pass any greater right by being sued and suffering judgment by default ? ‘Certainly not.
A careful re-examination of the whole case, in the light afforded by an argument evincing great research and ability, we are again brought to the unanimous conclusion that the judgments of the district court and general term must be
Affirmed.