Thomson v. Thomson, &c.

CASE 78—PETITION ORDINARY—October 25.

# Thomson v. Thomson, &c.

### APPEAL FROM FAYETTE CIRCUIT COURT.

93  435|
110 134

93  435
117  61
e117  63

93  435
134  801

1. WHERE ONE ENTERS UPON LAND UNDER A VERBAL GIFT AND CON-
TINUES IN POSSESSION FOR FIFTEEN YEARS, claiming the land as
his own, the donor's right to recover the land is barred, and in an
action brought by him for that purpose he is not entitled to an
instruction telling the jury that in order to defeat his title the
adverse possession must have been "open and of such character
as to clearly show that .the occupant claimed the land as his
own," as the donor must be presumed to have had notice of such
adverse claim, he having put the defendant in possession intend-
ing that he should claim the land as his own.

2. ADMISSIONS OF THE DEFENDANT AS TO THE TERMS UPON WHICH HE
HELD THE LAND, made by him after the plaintiff's right to recover
the land was barred by adverse possession, do not constitute an
estoppel. What they amounted to as evidence on the issue of
fact was for the jury to determine.

3. BURDEN OF PROOF.—The defendant having confessed by his answer
that title was once in the plaintiff, the burden is upon him to show
that the plaintiff has been divested of title by adverse possession.

4. NEW TRIAL—REVERSIBLE ERROR.—Although it is by the Civil
Code made in terms a cause for new trial that the verdict is not
sustained by sufficient evidence, this court will reverse upon that
ground only when the verdict is clearly and palpably against the
weight of evidence.

BRECKINRIDGE & SHELBY FOR APPELLANT.

1. As to the doctrine of adverse possession under a verbal gift of land.
(Commonwealth v. Gibson, 85 Ky., 666; Strother v. Cyrus, 5 Ky.
Law Rep., 58; Wells v. Head, 12 B. Mon., 170; Henderson v.
Dupree, 82 Ky., 682; Strutton v. Strutton, 10 Ky. Law Rep., 608;
Glass v. Gaines, 13 Ky. Law Rep., 278.)

2. Where the evidence of the party upon whom rests the burden of
proof is equally consistent with the existence and the non-exist-
ence of the state of fact necessary to make out his case, there is a
failure of proof, and a peremptory instruction should be given.
(Hughes v. C., N. O. & T. P. R. Co., 13 Ky. Law Rep., 72; Cotton
v. Wood, 8 Com. Bench (N. S.), 568; Baulec v. N. Y. & H. R. R.
Co., 59 N. Y., 366; Hayes v. Ferry R., 97 N. Y., 259.)

3. As to the nature of estoppel *in pais*.    (Dezell v. Odell, 38 Am.
Dec., 630; Caldwell v. Auger, 77 Am. Dec., 517.)

4. Such estoppels need not be pleaded.   (Note to Duchess of Kingston's Case, 2 Smith's Leading Cases, side page 683; Hawley v. Little-brook, 20 Conn., 527; Welland Canal Co. v. Hathaway, 24 Am. Dec., 54: Caldwell v. Auger, 77 Am. Dec., 517; Turnipseed v. Hudson, 19 Am. Rep., 17; Bigelow on Estoppel, p. 699; Sanderson v. Collman, 4 M. & G., 209; Lyon v. Reed, 13 M. & W., 285.)

5. One who enters under an unconditional parol gift of land and thenceforth claims adversely to the title of the real owner may, in an action for the recovery of the land, dispute the latter's title. (Voorhies v. White's Heirs, 2 A. K. Mar., 26; Macklot v. Dubreuil, 43 Am. Dec., 553–5.)

CHAS. J. BRONSTON of counsel on same side.

JOHN R. ALLEN for appellees.

1. Where an unconditional parol gift is made and the donee enters into possession of the land in pursuance of that gift, the possession, from that moment, is *presumed* by the law *to be adverse;* and the continuous possession of the land in pursuance of the gift, for the statutory period of time, makes the title perfect.   (Wood on Limitation, p. 539; Commonwealth v. Gibson, 85 Ky., 666; Stael v. Johnson, 4 Allen, 425; Outcalt v. Ludlow, 32 N. J. L., 251; Chamberlain v. McKinney, MS. Op., Nov. 1, 1884; Lewis v. Lewis, 5 Ky. Law Rep., 858; Talbott v. Thome, 13 Ky. Law Rep., 401; International Bank of St. Louis v. Fife and others, 8 S. W. Rep., 241.)

2. Neither of the writings relied on has any of the elements of an estoppel *in pais.*   (Pickard v. Sayres, 6 Ad. & El.; Smith's Leading Cases (7 Am. ed.), vol. 2, p. 668, notes; Herman on Estoppel, sec. 4, p. 8, 1st ed.)

3. Even if the writings might otherwise operate as an estoppel, the fact that they are not pleaded is sufficient to prevent them from having that effect.   (Civil Code, sec. 95, subsec. 2; Bliss on Code Pleading, 2d ed., sec. 364; Davis v. Davis, 85 Am. Dec., 164; Farris v. Dunn, 7 Bush, 277; Stacy v. Holliday, 9 Ky. Law Rep., 517; Ray v. Longshaw, 4 Ky. Law Rep., 905.)

JUDGE LEWIS delivered the opinion of the court.

This is an action brought May 1, 1888, by appellant P. H. Thomson against Margaret Thomson, widow, and Rodes, Charles and C. C. Thomson, children and heirs, of Rodes Thomson, son of plaintiff, for recovery of a tract of about 100 acres of land.

While the allegation of the petition that plaintiff is

owner and entitled to possession of the land is denied in first paragraph of the answer, in the second defendants state that for consideration of love and affection an absolute gift of it was made by plaintiff to his son Rodes, under which he took and, for more than fifteen years before commencement of the action, held possession adversely. It is, therefore, manifest the burden of proof was on defendants to show plaintiff had been divested of title, thus confessed to have been once in him, by adverse possession affirmatively pleaded.

The evidence introduced on behalf of defendants, uncontradicted, as was the case at conclusion of it, fully supported their claim of title, and consequently the motion then made for an instruction to the jury to find for plaintiff was properly overruled. The same motion was made and overruled at conclusion of the entire evidence. But we need not review the ruling then made, because it is subordinate to the question that arose on motion for a new trial, whether the verdict is sustained by sufficient evidence.

Although it is by subsection 6, section 340, Civil Code, made in terms a cause for new trial that the verdict is not sustained by sufficient evidence, this court will not reverse simply because a verdict is not in our opinion sustained by a preponderance or the weight of evidence, but only when it is clearly and palpably against it.

About the year 1867, plaintiff P. H. Thomson placed his son Rodes in possession of about 150 acres, including the 100 acres in dispute, which was part of his home tract containing about 1,200 acres. He also placed two other sons and a daughter in possession of a part of his tract. But some years after that date, though before expiration

of fifteen years, concluding the quantity he had set apart
to Rodes and another son was an undue portion, he became
dissatisfied, and cut off and repossessed himself of enough
of each tract to reduce it to about 100 acres, which was
defined and identified, as had been the original parcel of
150 acres.   The evidence clearly shows that from 1867 to
his death in 1888, Rodes Thomson had continuous pos-
session, use and enjoyment of the 100 acres of land.   He
erected improvements upon it and obtained policies of
insurance in his own name, and when the dwelling was
burned collected and appropriated the insurance money.
He listed and paid taxes on it.   From time to time he
leased parts of it to and collected rents from various ten-
ants, including his father.   In fact he had, without any
question or interference whatever by his father up to
1884, as full possession, use and control of the land as if he
had been the actual owner of an indefeasible title.   In
addition to all these acts of ownership, of which his
father, residing not one mile away, was cognizant and
never objected to, several disinterested witnesses testify
that on various occasions the plaintiff told them he had
given the land to his son and disavowed his own owner-
ship and control of it; and in 1878 actually executed a
receipt which, fairly interpreted, practically amounts to
an admission he had given the land to his son, and dis-
claimer of ownership in himself. It appears that previous
to that time a policy of insurance on the dwelling-house,
afterward destroyed by fire, had been issued to Rodes
Thomson, and objection was made by the insurance com-
pany to paying amount of insurance on the ground he
was not the owner.   Thereupon, in addition to receipt of
the money given by Rodes himself, P. H. Thomson exe-

cuted the following writing: "I hereby acknowledge the receipt of my son Rodes Thomson of the sum of $800 to him by the Kenton Insurance Company for the loss under this policy, and in consideration of such payment so made, I hereby waive and release all my rights, *if any I had or have*, to compensation of said loss."

There is evidence on the other hand of plaintiff and others tending to show he did not give the land to Rodes Thomson; and in addition there was introduced a paper, executed by him at the instance and at the house of his father, in which it is stated substantially the latter had, a number of years previously, loaned to him use of the one hundred acres of land, and that he then recognized it to be the land of his father, with the unimpaired right to retake possession and dispose of it at his pleasure; and furthermore, that he (Rodes) never held said land adversely to his father, but all the time recognized his title as perfect. In 1884 another paper was prepared by his brother, which he was induced to sign, containing, in the language used, a *solemn* disavowal of any right to the land, and admission of title at that date in his father.

Rodes Thomson married in 1869 against his father's will, and there never was afterward much intercourse or good feeling between his wife and father's family; nor do Rodes and her appear to have always lived together harmoniously. He was very dissipated and, as a consequence, generally embarrassed financially; and at the time the last paper was given owed his brother, who had required him to make a settlement. The evidence is such that it might have been reasonably inferred by the jury that not only was Rodes Thomson, on account of his dependence upon his father, without disposition or will to resist any

demand made on him, but that the papers proved too much; for they were evidently prepared in pursuance of advice of a lawyer, and with a view to defeat his title, probably already acquired by more than fifteen years possession under what he might be able to show was an unconditional gift. Therefore, as evidence, the papers can not be necessarily treated as conclusive on the issue of fact in favor of the plaintiff. Nor do they amount to an estoppel; for at their dates, more than fifteen years after 1867, Rodes Thomson had or had not acquired a perfect title to the land. If he had, then H. P. Thomson could not have then, by any legal proceeding, divested him of title or possession of the land, and consequently neither the position nor rights of plaintiff were altered or in any way affected by what was stated or admitted in the papers. If he did not then have title, it was because there had in fact never been any verbal gift of the land nor adverse possession under it, and consequently H. P. Thomson's right to recover the land was not impaired by reliance on any such concession or admission, his right to maintain an action, if he had any, being as complete in 1888 as it was in 1884. It seems to us the statements and admissions contained in those papers do not constitute an estoppel in any sense of the term. What they amounted to as evidence on the issue of fact was for the jury to determine. It thus results as our opinion that the instruction asked to the effect that if plaintiff, relying on statements and promises contained in those papers, withdrew his demand for possession and consented for Rodes to remain, the jury should find for plaintiff, was properly refused by the court.

The instruction given, and which presents the true issue,

is as follows: "If the jury believe from the evidence that the plaintiff, Patrick Henry Thomson, made an abso- lute and unconditional verbal gift of his entire title to the land described in the petition to his son Rodes Thomson; and in pursuance of such gift, he, the said Rodes Thom- son, entered into the possession thereof, claiming title thereto according to such gift, and that such possession of said land continued for a period of fifteen years previous. to Rodes Thomson's death, and during such period his said possession was actual, visible and notorious, then such possession is adverse and the jury should find for the defendant." It seems to us the meaning and effect of adverse possession, as applicable to this case, could not be more fully or accurately defined; and if there is any fault in it, defendants, not plaintiffs, were liable to be preju- diced thereby.

But counsel contends it was error to refuse an instruc- tion asked embodying the idea that adverse posses- sion, sufficient to defeat the legal title of plaintiff, must have been hostile in the commencement and continued uninterruptedly for fifteen years, and of such char- acter as to clearly show that Rodes Thomson, the occupant, claimed the land as his own. A joint tenant may, by adverse possession for fifteen years, defeat any recovery by his co-tenant; so a lessee's adverse possession for the statutory period tolls the right of even his land- lord's entry. But as the entry is in each of such cases amicable, and no presumption of adverse claim exists, adverse possession, in order to bar recovery, should be brought to notice of the joint tenant or landlord, and therefore proved to have been open and of such character as to clearly show that the occupant claimed the land as

his own.   But in this case, as in every one like it, when it is shown an absolute gift of land was made by the father to the son, and that the latter took and held under it, adverse possession follows and continues as a legal consequence, and the donor must be presumed to have had notice of such adverse claim, because it was intended and procured by him to be so.

Perceiving no error of law occurring on trial of this case, and the verdict not, in our opinion, being clearly against the evidence, the judgment is affirmed.