CASE 100.—ACTION BY THE GAFFNEY OIL COMPANY AGAINST THE NEW DOMAIN OIL & GAS COM-PANY AND OTHERS.—Oct. 14, 1909.

## New Domain Oil Gas Co. v. Gaffney Oil Co.

Appeal from Wayne Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for plaintiff, and the New Domain & Gas Company appeals.—Affirmed.

1.  Adverse Possession—Title Acquired.—Though a parole sale of land is void under the statute of frauds, where the purchaser is put into possession and continues in actual adverse possession for 15 years, he acquires title by operation of the statute of limitations.

2.  Adverse Possession—Extent of Possession.—The intent of one entering on land in the exercise of ownership is an element in determining the legal effect of his act, for an entry within a boundary is a reduction of the whole boundary to possession, provided such is the intention, as actual possession embraces in meaning the occupancy of a part of a well defined boundary, intending thereby to reduce the whole to possession.

New Domain Oil Gas Co. v. Gaffney Oil Co.

3. Advere Possession—Acquisition of Title—Extent of Possession. —Where one enters under a deed, not from the true owner, and claims adversely, his deed is evidence of the extent and character of the possession, though not of title.

4. Adverse Possession—Acquisition of Title—Extent of Possession.—One entering without a deed on a boundary plainly marked, with the intention of reducing the whole to his possession, claiming all, and using it as he wills, reduces the whole to his actual possession, unless some part thereof is in the actual possession of another, or unless there is a conflict in the boundary with another which is older, or superior, and the owner of the latter has entered on the boundary.

5. Adverse Possession—Acquisition of Title.—The purchaser under a parol contract, of 25 acres of a larger tract, was put into possession by the vendor, who was the owner, by parol purchase, of an additional 50 acres adjoining from a third person, which was also included in the sale of the purchaser. The purchaser was placed in possession of the whole boundary, which was marked, and he took up his residence on the 50-acre tract, claiming to the extent of the boundaries of the whole 75 acres, and continued in such possession for over 15 years. Held, that the purchaser acquired title to the whole 75 acres by adverse possession.

6. Adverse Possession—Acquisition of Title.—Where a grantee under an executory contract for the sale of land looks to his grantor for title, he can not, as a general rule, claim that his possession was so adverse to his grantor as to defeat the latter's lien for the unpaid price; but, where the grantee has paid for the land, his possession is hostile to any claim of superior title by the grantor, and, though a deed is not executed, the grantee may use his possession, after the statutory period, to defeat the claim of his grantor, or any one else, to the right of possession.

7. Adverse Possession—Nature of Claims.—Where possession of real estate is hostile to any claim of right by a former owner, it sets the statute of limitation running, though the . one in possession looks to the former owner for a conveyance.

8. Estoppel—Equitable Estoppel—Nature.—Estoppel operates only to protect the innocent, who are misled to change their condition in reliance on an appearance.

9. Estoppel—Title by Estoppel.—A grantee, who knew that a third person was the owner of the land under a parol purchase, followed by actual adverse possession for 15 years, took nothing under the deed of a former owner, because

the former owner had no title, and the third person was not
estopped to deny that fact.

10. Estoppel—Title by Estoppel.—Where a lessee, taking an oil
lease, had actual knowledge of the fact that his lessor did
not own the land, but that a third person owned it under a
parol purchase, followed by adverse possession for more
than 15 years, the third person was not estopped to deny
the validity of the lease.

11. Mines and Minerals—Oil Lease—Forfeiture.—The right to de-
clare an oil lease forfeited is a personal privilege of the les-
sor, and when he elects to waive it no one else may take
advantage of it.

O. H. WADDLE & SON and HARRISON & HARRISON, attor-
neys for appellants.

### POINTS AND AUTHORITIES.

1. To acquire title to land by adverse possession, such posses-
sion must be actual, visible, exclusive, hostile and continued dur-
ing the time necessary to create a bar under the staute of limi-
tation. Although the possession may be continuous if the occu-
pant recognizes or acknowledges the title of the true owner the
possession is not adverse, and such possess'on continues friendly
as long as the true owner is looked to for title and his owner-
ship of the title recognized. 1 Cyc. 1014, 1033; Haffendorfer v.
Gault, 84 Ky. 124; Butts v. Chinn, 4 J. J. M. 641; Spriggs' Heirs
v. Albin's Heirs, 6 J. J. M. 158; Henderson v. Dupee, 83 Ky. 678.

2. The covenants of an oil and gas lease runs with the land,
and the lessor may assign his interest in the lease, or he may by
a conveyance of the realty itself carry his rights in the lease.
This right of assignment also rests in the lessee, and in case of
any assignment the assignees must deal with the then owners in
the same manner as the original lessor and lessee are required
to do.

3. A contract for the purchase of land in parol, the purchaser
agreeing to look to a third party who owns the legal title
for a conveyance does not acquire any title to such land, and
although he may take and continue in the actual possession
thereof his holding is not adverse to the owner of the legal
title until he disclaims to hold under such owner, and he can
acquire no title under the statute of limitations by adverse pos-
session unless he shall continue in the possession for the statu-
tory period after such disclaimer is made.

4. A party being in possession of land by parol purchase and
looking to a third party who is the owner of the legal title for
procurement of the legal owner to convey title by deed to the

New Domain Oil Gas Co. v. Gaffney Oil Co.

person to whom he makes sale, thereby divest himself of any right or interest in said land and the conveyance from the legal holder of the title to the person to whom he sells gives such person a clear and indefeasible title.

STONE & WALLACE, for appellees.

### AUTHORITIES.

On question of boundary included in lease: McGowan v. Branham, 95 Ky. Rep., 581. Wallace v. Maxwell, 1st. J. J. Marshall, 447. Steele v. Williams, 15 S. W. Reporter (Ky. Dec.) page 49.

Question of adverse possession involved: Blue v. Sayre, 2nd. Dana, page 213. The Commonwealth v. Gibson, et al, 85 Ky. Rep., page 666. Thompson v. Thompson, 93 Ky. Rep., page 435. Spradlin v. Spradlin, 13th. Ky. Law Rep., page 723. Medlock v. Suiter, 80 Ky. Rep., page 101. Pope, &c. v. Brassfield, &c., 110 Ky. Rep., pakes 134 to 135. Ogdon v. Walkers Heirs, 36 Ky., page 426. Chambers v. Peak, 36 Ky. 426. Morton v. Lanison, 40 Ky., 45. Turner v. Davis Admr., 40 Ky., 151. Farron's Heirs v. Edmanson, 43 Ky., 605. Phillips, et al v. Sullivan Heirs, et al, 1st. Ky. Opinion. Boyce v. Blake, 2nd. Dana, page 127. Miller, &c. v. Wireman, 80th. S. W., 517. Logan, &c. v. Phenix, 66 S. W., page 1042.

Questions affecting terms of lease: Westmoreland Vo. v. DeWitt, 5th. L. R. A., page 731. Thornton on Oil & Gas, page 182. James E. Evans v. Consumers Natural Gas Co., 31 L. R. A., page 673. John A. Willis v. Manufacturers Natural Gas Co., 5th L. R. A., page 603. Davis v. Moss, 38 Pa. 346.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

Wm. Dobbs was the patentee of a tract of 63 acres of land in Wayne county in 1859. Some 50 years ago he sold 25 acres of this land to one Tom Smith, setting it apart by marked boundary. Smith sold the same tract to Davenport, and Davenport sold it back to Dobbs. Dobbs subsequently resold to Davenport, putting him in possession of it, and Davenport sold it to Henderson Foust some 30-odd years ago, putting Foust in possession. All these sales were by parol. Davenport was also the owner by parol purchase of an adjoining tract of 50 acres, which he had bought

from Irwin Miller. This latter tract was included in the sale to Henderson Foust, who was placed in possession of the whole boundary, which was marked. He took up his residence on the 50-acre tract, claiming to the extent of the exterior lines of the whole 75 acres. In 1901 Henderson Foust executed an oil lease on his lands to one W. R. Cress. The written lease describes the property embraced as follows: ''Being the property whereon the said Henderson Foust now resides, and was conveyed to him by Irwin Miller and bounded substantially as follows: On the north by the lands of Hence Foster; on the east by the lands of William Dobbs; on the south by the lands of Thomas Foster and James Burnett; on the west by the lands of William Bell and Noah Ball—containing 75 acres more or less.'' The parties regarded that the ''deed lay in William Dobbs,'' as they expressed it, yet for more than 25 years Henderson Foust claimed the land as his own, exclusive of Dobbs and all others, and lived within the common boundary embracing the 25 acres now in question.

In 1905 Henderson Foust caused William Dobbs to execute a deed to the 25-acre parcel to Bryant Foust and J. W. Foust, sons of Henderson. This was done by Dobbs, not upon any idea or claim that he owned the land, but to comply with his previous parol contract sale; he admitting all the while that Henderson Foust owned the land, had paid for it, and was in the actual possession of it. In April, 1907, Bryant Foust and J. W. Foust executed a mineral lease upon this 25 acres to the appellant. The Cress lease (which had in the meantime been assigned to appellee) contained the stipulation that the lessee and his assigns should within one year from its date, July 30, 1901, begin the drilling of an oil well on the leased premises (the

75 acres), or in default thereof pay the lessor $7.50 a year, and, if oil was found in paying quantities, set over to the lessor one-tenth thereof. It was further stipulated in the lease that the payment of the annual rentals might be by deposit to the credit of the lessor in the Bank of Monticello. The lessees from Henderson did not begin drilling within a year from July 20, 1901. But they paid the rental of $7.50 each year as it became due until 1907. On July 30, 1907, appellee's manager, who was charged with the duty of paying the rental, was ill. He was on the opposite side of the river from the lessor and from Monticello. The river was swollen with sudden floods, so that he could not get across. But he did get across on the following day, when he deposited the $7.50 rent in the Bank of Monticello to the credit of the lessor, Henderson Foust. Learning on the following day that appellant was asserting claim to the property, he sent for Henderson Foust, who demanded $2.50 additional because of delay of one day in paying the rent, which appellees paid to him. Appellees did not then know that Henderson Foust had caused the deed to be made by Dobbs to Bryant and J. W. Foust, although the latter knew that their father had in 1901 leased the land to appellees' assignor, and that appellees had been paying him rent therefor regularly. Afterwards, but over the protest of appellees, appellant began drilling on the 25-acre tract for oil, and later brought in a paying well.

This suit was brought by appellees against appellant and J. W. Bryant and Foust to restrain them from taking the oil from the well, and to restrain them from asserting claim or title to the oil and mineral in the 25 acres. The judgment was for the plaintiffs. While a parol sale of land is void, under the

statutes of frauds and perjuries, yet if the purchaser is put in possession of the land, and continues in the actual adverse posession of it for 15 years, he will have title to it, not by virtue of his purchase, but by operation of the statutes of limitations. Pope v. Brassfield, 110 Ky. 134, 61 S. W. 5, 22 Ky. Law Rep. 1613; Ogden v. Walker's Heirs, 36 Ky. 420; Chambers v. Pleak, 36 Ky. 426, 32 Am. Dec. 78; Morton v. Lawson, 40 Ky. 45; Turner v. Davis, 40 Ky. 151; Farrow v. Edmundson, 43 Ky. 605, 41 Am. Dec. 250.

This much is admitted by appellant; but it is insisted that Henderson Foust had not either the actual or adverse possession of the 25-acre tract.

Where one enters upon land in exercise of ownership, his intention is an essential element, as is his conduct, in determining the legal effect of his act. Early in the history of this state, and from the nature of the situation, those who entered upon their pre-emptions were not able to reduce at once the whole to an inclosed possession. There arose from that fact and the necessities created by the situation in the country, the principle that an entry within the boundary was a reduction of the whole boundary to possession, if such were the entrant's intention. The boundaries were most frequently indicated by marked or blazed trees as monuments, and served to give notice to the world that the occupant's possession was co-extensive with the boundary in which he resided, or upon which he made a physical inclosure. Any one concerned in knowing the extent or nature of the occupant's possession could, by following up the information gained from the latter's actual residence, learn where the exterior lines of the boundary so reduced to possession lay, as well as whether the

possession was adverse to every other claimant.
Therefore the law deemed that such adverse posses-
sion served to oust the true owner's constructive pos-
session, and gave to the latter an action of ejectment.
The principle, while denominated actual possession,
has been differentiated from that actual possession
which is the physical occupancy of a house, or the in-
closure of a lot by a fence, by sometimes calling it
"constructive actual possession." However, the legal
definition of actual possession, as applied to lands,
has now come to be recognized as embracing the char-
acter of possession outlined above. So, where one has
a deed, but not from the true title holder, yet enters
under it, claiming adversely, his deed is admitted as
evidence, not of title, but of extent of possession, as
well as character of possession. But a deed is not
essential to enable one to enter upon a boundary of
land and to hold it adversely, if the entrant
enters upon a boundary, plainly marked, with the
intention of reducing the whole to his possession,
claiming it all, and using it as he wills, he by that
act reduces the whole boundary to his actual posses-
sion, unless some part of the boundary be in the
actual possession of another, or unless there is a con-
flict in the boundary with another which is older and
superior, and the owner of the latter has entered upon
his boundary.

Without following the exceptions into certain quali-
fying distinctions not necessary to be noticed in this
opinion, it is affirmed that actual possession is now
understood to embrace in meaning the occupancy of
a part of a well-defined, or marked, boundary of land
intending thereby to reduce the whole boundary to
possession. By this test Henderson Foust had an

actual possession of the whole 75 acres constituting his boundary for more than 15 years before he leased to appellee's assignor. Nor is it material that his common boundary was made up of two smaller parcels originally owned by different parties. When he bought he bargained for the common boundary, without reference to its artificial subdivision, and when he entered it was upon the entire boundary as one body of land. This was a reduction of the whole to his actual possession. The fact that he took a deed to a part of it from Miller did not affect the fact of his possession or the nature of his claim of the whole. He claimed it all adversely before that deed was executed, and did not change his possession or alter his claim after the deed.

But it is said that Henderson Foust's possession was not hostile to Dobbs' title; that, as Foust admitted that he was looking to Dobbs for a conveyance, his claim was amicable to Dobb's title. Where a grantee under an executory contract for the sale of land looks to his grantor for title, it is generally held that he cannot at the same time claim that his possession was so adverse to his grantor as to defeat the latter's lien for unpaid purchase money. But where the vendee has paid for the land, and owes nothing to his vendor, his possession is hostile to any claim of superior title or right by the latter, and although a deed is not executed, the vendee could use his possession, after the statutory period, to defeat the claim of his vendor or any one else to right of possession because the paper title was vested in them. If the possession is hostile to any claim of right by the former owner, it is adverse to it, and sets the statute running, al-

though the person in possesion may be looking to the former owner for conveyance. Commonwealth v. Gibson, 85 Ky. 666, 4 S. W. 453, 9 Ky. Law Rep. 205; Thomson v. Thomson, 93 Ky. 435, 20 S. W. 373, 14 Ky. Law Rep. 513; Owsley v. Owsley, 117 Ky. 47, 77 S. W. 397, 25 Ky. Law Rep. 1186; Spradlin v. Spradlin, 18 S. W. 14, 13 Ky. Law Rep. 723.

It follows that Henderson Foust had, by operation of the statutes of limitation, become invested with the fee-simple title to the 25 acres before he leased the land to Cress. Dobbs' deed to Bryant and J. W. Foust conveyed them nothing, so far as the act of Dobbs is concerned.

It is sought to work out a conveyance of Henderson Foust's title to his sons by Dobbs' deed through estoppel. Estoppel operates only to protect the innocent. If Bryant and J. W. Foust, being in ignorance of the fact that Henderson Foust owned the land, but being induced by him to believe that William Dobbs owned it, had bought the land from Dobbs, Henderson Foust would be held thereafter estopped to deny what he had induced an innocent person to believe to be true to his hurt. But in this instance the Foust boys were not misled. They knew that their father, and not William Dobbs, owned the land. Hence they took nothing by the deed, first, because, the grantor Dobbs had no title to convey; and, second, because the real owner was not estopped to deny that fact.

But it was urged that appellant was induced to take the lease and part with its money to the younger Fousts because of the deed from the patentee, Dobbs, to them, and of their apparent ownership, an appear-

ance, it is argued, produced by the act of Henderson Foust, and which ought to estop him to deny it. We repeat it is only those who are misled to change their condition in reliance upon an appearance that can plead the fact in estoppel of the truth. Appellant was not so misled. It had notice and actual knowledge that Henderson Foust owned the land, and that his sons did not. The notice consisted in the information conveyed to appellant's agent who was attempting to obtain the lease, imparted by W. M. Powers and Henderson Foust, by the latter's ocupancy and all the facts that prudent inquiry would have developed, being set in motion by the fact of his possession, instead of that of either of the boys or Dobbs.

As neither Bryant nor J. W. Foust, nor appellant, took anything under or by virtue of Dobbs' deed, it did not lie in their mouths to question the continuance of Cress' lease, or whether it had been.forfeited. That was a personal privilege of Henderson Foust, and when he elected to waive it the incident is closed to the rest of the world.

We find that the description in the Cress lease included the land in controversy.

We conclude that the judgment should be affirmed.